Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/12/2020 08:08 AM CDT

State of Nebraska, appellee, v.
Darryl Lierman, appellant.

___ N.W.2d ___

Filed March 20, 2020.    No. S-18-402.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Criminal Law: Judgments: Proof.** An acquittal in a criminal case does not preclude the government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof.

4. **Criminal Law: Proof.** The standard of proof in a criminal case is that the State must prove the charges against the defendant beyond a reasonable doubt.

5. **Sexual Assault: Evidence.** Evidence that a defendant committed an act of sexual assault is, by its very nature, prejudicial.

6. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

7. **Judges: Recusal.** A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed.

8. **Trial: Judges: Words and Phrases.** An ex parte communication occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party.

9. **Trial: Judges: Recusal.** A judge who initiates or invites and receives an ex parte communication concerning a pending or impending proceeding must recuse himself or herself from the proceedings when a litigant requests such recusal.

10. **Judges: Recusal.** A judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.

11. **Judges: Recusal: Presumptions.** A party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality.

12. **Sentences: Appeal and Error.** An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.

13. **Judgments: Words and Phrases.** Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

14. **Statutes: Appeal and Error.** Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.

15. **Effectiveness of Counsel: Appeal and Error.** In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.

16. ____: ____. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.

17. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

18. **Effectiveness of Counsel: Proof: Appeal and Error.** When a claim
of ineffective assistance of trial counsel is raised in a direct appeal, the
appellant is not required to allege prejudice; however, an appellant must
make specific allegations of the conduct that he or she claims constitutes
deficient performance by trial counsel.

Appeal from the District Court for Antelope County: Mark
A. Johnson, Judge. Affirmed.

Bradley A. Ewalt, of Ewalt Law Office, P.C., L.L.O., for
appellant.

Douglas J. Peterson, Attorney General, and Kimberly A.
Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke,
and Papik, JJ.

Heavican, C.J.

## I. INTRODUCTION

Darryl Lierman was convicted of multiple counts of sexual
assault of a child and child abuse and was sentenced to a total
term of 70 to 140 years' imprisonment, with credit for 272
days' time served. The child in question was B.L., Lierman's
adopted daughter, who was born in January 2000. Lierman's
primary argument on appeal is that the district court erred in
admitting evidence of prior sexual assault alleged to have been
committed by Lierman against another adopted daughter, A.L.,
because Lierman was acquitted in that case. We affirm.

## II. BACKGROUND

Lierman was charged by information with three counts of
first degree sexual assault of a child, three counts of third
degree sexual assault of a child, and four counts of child abuse.
Though further details of these charges will be discussed in
more detail below, it is sufficient to note here that B.L. alleged
this sexual abuse began in approximately 2010. At that time,
Lierman was on bond awaiting trial on charges that he sexu-
ally abused B.L.'s biological sister, A.L., who was another of

Lierman's adopted daughters. Lierman was eventually acquitted by a jury of the charges involving A.L.

B.L.'s allegations first came to light on or about February 12, 2015. On February 7, B.L. ingested an unknown number of pills in an attempted suicide and was taken to a hospital in Kearney, Nebraska. During a counseling session on February 12, B.L. made statements suggesting that Lierman had been sexually abusing her. An interview at a child advocacy center was scheduled, at which time B.L. made further allegations against Lierman, including that he would make her model bras for him and that he would watch her while she was showering. B.L. was placed in foster care while the matter was investigated.

In July 2015, B.L. disclosed that from the ages of 12 to 14, she was subject to digital and penile penetration by Lierman on more than one occasion, primarily while at the family's home in Neligh, Nebraska. Lierman was ultimately charged with the allegations set forth above. Various pretrial hearings were held, details of which will be noted below as relevant. After a jury trial, Lierman was found guilty of all charges. He appeals.

## III. ASSIGNMENTS OF ERROR

On appeal, Lierman assigns that the district court erred in (1) allowing the State to present evidence of prior sexual assaults, where that evidence was in support of charges of sexual assault for which Lierman was ultimately acquitted, or where at least some of those assaults were alleged to have been committed by Lierman in other jurisdictions; (2) not admitting evidence that prior to her suicide attempt, B.L. was unhappy at home and at school and was using the home computer to access adult dating sites; (3) finding the evidence sufficient to convict Lierman; (4) not recusing itself; (5) imposing excessive sentences; and (6) not permitting Lierman to issue subpoenas duces tecum in order to obtain records through depositions. Lierman additionally assigns that his counsel was ineffective by not (1) calling certain witnesses, (2) utilizing

evidence of Lierman's driving logs to form an alibi defense, (3) filing a motion in limine regarding the evidence to be sought about B.L.'s difficulties at school and general unhappiness, (4) objecting to the order in which the State presented its evidence, and (5) objecting to the State's use of B.L.'s suicide attempts and ideations.

## IV. ANALYSIS

### 1. Admissibility of Evidence

#### (a) Standard of Review

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[1] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[2]

#### (b) Background

Prior to trial, the State filed a motion for a hearing to determine the admissibility of prior sexual assault evidence and an intent to offer additional evidence pursuant to Neb. Rev. Stat. §§ 27-404 and 27-414 (Reissue 2016). The State averred that it wished to use evidence that had previously been presented against Lierman in the case involving A.L.'s allegations.

At this hearing, the State introduced evidence generally comprising three categories: (1) evidence that had been offered against Lierman during A.L.'s trial in Antelope County, Nebraska, for which Lierman was acquitted; (2) evidence that was not offered in Antelope County either for reasons not clear from the record or because the events in question did not occur in Antelope County, but instead in Madison County, Nebraska,

---

[1] *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013).

[2] *Id.*

or while Lierman was on the road with A.L; and (3) evidence of allegations by B.L. that did not occur in Antelope County, but instead in Madison County, or while Lierman was on the road with B.L.

A.L. testified that Lierman began sexually abusing her when she was approximately 10 years old, when the family lived in both Neligh and Tilden, Nebraska. A.L. testified that Lierman had, for the 2 or 3 years prior, sought "hip rubs" from A.L. and asked her to walk on his back. (There was testimony at trial that "hip rubs" and the children's walking on Lierman's back were a common occurrence for all of the children in the household and were apparently performed to relieve pain that Lierman suffered as a result of his over-the-road trucking job. The record shows that Lierman was obese, weighing approximately 500 pounds.)

The first sexual abuse occurred when A.L. was sleeping with Lierman and Lierman's wife, Julie Lierman (the mother of the adopted children), in the couple's bed. Early in the morning of this first occasion, A.L. was giving Lierman a hip rub and accidently rubbed his penis over his clothing. A.L. was told to stop and was sent to her own bed. But the next night, A.L. was again sleeping with Lierman and Julie in their bed, when Lierman told her to "do what [you] did last night." At first A.L. thought Lierman meant a hip rub, but subsequently began rubbing his penis over his clothes, and Lierman did not tell her to stop.

Lierman eventually introduced A.L. to the "cowlick," which involved Lierman's licking A.L.'s vagina. A.L. testified that at the time, she and Lierman were watching television in the couple's bedroom and Julie was not at home. The "cowlick" began after the family moved to Tilden.

A.L. also testified that Lierman began taking her on his multiday trucking routes and would engage in sexual activity with her in the sleeper portion of the semi-truck. On one such occasion in the truck, A.L. and Lierman were watching a movie and Lierman told A.L. to rub his penis, which A.L. did

over his clothing. Lierman then directed her to rub his penis under his clothing. In a second incident, A.L. was walking on Lierman's back, when he rolled over and she accidentally hit his groin area, causing him pain. He then grabbed her, took off her pajamas, got on top of her, and penetrated her vagina with his penis. A.L. cried out that it hurt and screamed at him to stop, but Lierman placed a pillow over her head to muffle the screams. A.L. further testified that almost every time she went with Lierman in the truck, some type of sexual activity occurred, and that she was often asked to model underwear that he had brought along.

A.L. testified that after the family moved from Tilden to Neligh, she shared a room with another sister. The house was being remodeled, so Lierman and Julie's bed was in the living room, and as a result, no sexual abuse took place during that time. But as soon as the remodel was finished, the sexual abuse resumed. The abuse usually began with a request that A.L. give Lierman a hip rub or back rub, and it occurred most evenings when Lierman was not on the road. A.L. also testified that she performed oral sex on Lierman and that Lierman used a purple sex toy on her on at least two occasions.

A.L. disclosed some of these events to Neligh school authorities on September 17, 2010, after speaking with the counselor about her concern that Lierman may have impregnated her. A search of the family's home revealed bedding and a purple sex toy. DNA that included Lierman and A.L., but excluded Julie, was found on both items. (The DNA evidence was apparently either not available or not offered at the time of Lierman's trial on A.L.'s allegations.)

Evidence of non-Antelope County incidents involving B.L. and Lierman was also offered. B.L.'s therapist testified that B.L. revealed to her that Lierman began sexually abusing her when she was approximately 10 years old, when the family lived in Meadow Grove, Nebraska, and while Lierman was out on bond for the charges he faced involving A.L. Similar to A.L., the abuse began with Lierman's asking B.L. to massage

his penis. B.L. reported that Lierman assaulted her while she was with him on the road and that Lierman was "'not right down there,'" meaning something was wrong with his penis. B.L. also reported that Lierman penetrated her with his penis and that it hurt.

Following this hearing, the court found that (1) the State was not barred by principles of collateral estoppel from introducing evidence regarding A.L., despite the fact that Lierman had been acquitted of those charges; (2) A.L.'s allegations were inextricably intertwined with B.L.'s allegations; and (3) the evidence the State sought to admit as to both A.L. and B.L. was conditionally admissible under §§ 27-404 and 27-414, subject to confirmation of factual similarities deemed relevant at trial.

### (c) Analysis

In his first assignment of error, Lierman assigns that the district court erred in admitting A.L.'s allegations, because he was acquitted of those charges at trial. He contends that the principles of collateral estoppel prevent the State from offering evidence about charges for which he was acquitted. Lierman also asserts that by offering evidence regarding A.L.'s allegations, the State was attempting to convince the jury that he should have been found guilty in A.L.'s case and that it had an opportunity to correct that wrong.

We turn first to Lierman's assertion that the U.S. Supreme Court's decision in *Ashe v. Swenson*[3] precludes the admission of that evidence. In *Ashe*, the Court explained that in the context of collateral estoppel, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[4]

[3] We find Lierman's assertion to be without merit. While *Ashe* does speak to the issue of collateral estoppel in the criminal case, the Court expanded on that holding in *Dowling*

---

[3] *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970).

[4] *Id.*, 397 U.S. at 443.

*v. United States.*[5] In *Dowling*, the Court noted that "an acquittal in a criminal case does not preclude the Government from relitigating an issue when it is presented in a subsequent action governed by a lower standard of proof."[6]

Section 27-414 provides:

(1) In a criminal case in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant.

(2) In a case in which the prosecution intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the accused, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen days before the scheduled date of trial or at such later time as the court may allow for good cause.

(3) Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under this section, the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

[5] *Dowling v. United States*, 493 U.S. 342, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990).

[6] *Id.*, 493 U.S. at 349.

(4) This section shall not be construed to limit the admission or consideration of evidence under any other section of the Nebraska Evidence Rules.

Thus, under § 27-414, assuming that notice and hearing requirements are met and the evidence survives a more-probative-than-prejudicial balancing test, evidence of prior sexual assaults are admissible if proved by clear and convincing evidence.

[4] The standard of proof in a criminal case is that the State must prove the charges against the defendant beyond a reasonable doubt,[7] a higher standard of proof.[8] Because the standard set forth as to the question of whether A.L.'s allegations were proved for purposes of § 27-414 is lower than the standard of proof the State was held to in prosecuting those allegations, the principles of collateral estoppel do not bar the admission of that evidence.

And we disagree with Lierman's contention that the State did not prove A.L.'s allegations by clear and convincing evidence. A.L. testified to the truth of her allegations, and her testimony was at least partially corroborated by DNA testing and other physical evidence. Lierman attempted to attack A.L.'s credibility by pointing out inconsistencies and failed memory, but as the State noted, those inconsistencies are typical of a young adult remembering traumatic events that took place years ago.

While the fact that Lierman was acquitted does not affect the threshold admissibility of the evidence under § 27-414, it is relevant to the undue prejudice analysis conducted under § 27-414 and Neb. Rev. Stat. § 27-403 (Reissue 2016). We held in *State v. Kirksey*,[9] a case involving § 27-404, that a prior acquittal

---

[7] See, U.S. Const. amend. XIV; *In re Winship*, 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

[8] See, e.g., *State v. Bigelow*, 303 Neb. 729, 931 N.W.2d 842 (2019).

[9] *State v. Kirksey*, 254 Neb. 162, 180, 575 N.W.2d 377, 390-91 (1998).

does not, in and of itself, preclude admission of the facts underlying the charge as evidence of other bad acts when offered for one of the purposes specified in [§ 27-404(2)]. . . . However, the acquittal is a factor which the court must consider when weighing the probative value of the evidence against the potential for unfair prejudice under [§ 27-403].

[5] We turn to the balancing test set forth in §§ 27-414 and 27-403. We first note that evidence that a defendant committed an act of sexual assault is, by its very nature, prejudicial[10]:

The [§ 27-403] unfairly prejudicial analysis cannot be based on the fact that evidence of sexual misconduct propensity evidence would be prejudicial. . . . Of course, the more probative the evidence is in establishing a similar deviant sexual propensity the more prejudicial the evidence becomes, but such prejudice is not unfair under [§ 27-403] because of its enhanced probative value.[11]

Despite the prejudice inherent in this type of evidence, the Legislature enacted § 27-414. Assuming that the evidence met the balancing test of § 27-414, the Legislature set no limitation on a fact finder's use of this evidence. This stands in contrast to § 27-404, where other types of character or bad acts evidence are presumed to be *inadmissible*, and where admissible for one or more of the particular purposes as set forth by the statute, the evidence may be considered only for those purposes. Thus, while § 27-404 is a rule of exclusion, § 27-414 is a rule of admissibility.

It is with an understanding of the prejudicial nature of such evidence, and the wide range of purpose for which the fact finder may consider it, that we weigh the various factors of the balancing test set forth in § 27-414.

The district court found, and we agree, that there was clear and convincing evidence that the events composing A.L.'s

---

[10] See *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012).

[11] 3 R. Collin Mangrum, Mangrum on Nebraska Evidence § 27-414[D](5) at 334 (2019).

allegations occurred. In addition, we have previously noted that evidence of the repeated nature of sexual assault incidents may be relevant in proving these crimes occurred, especially when committed against "'"persons otherwise defenseless due to age."'"[12] This is applicable in this situation, given the young age of B.L. (as well as A.L.) at the time of the alleged assaults.

In addition, the events described in A.L.'s allegations were close in time to the charges involving B.L. for which Lierman was on trial. According to A.L., Lierman sexually assaulted her until the time of his arrest, while B.L. testified that Lierman began assaulting her when he was on bond awaiting trial on A.L.'s allegations.

A.L.'s allegations were similar to the allegations made by B.L. The girls were similar in age when the assaults began, were sisters, and were both adopted daughters to Lierman. Both girls reported that the sexual acts grew out of "hip rubs" that they each gave Lierman, which led to fondling outside of clothing, and then eventually, penile penetration. Both girls reported incidents occurring in Lierman's bedroom and in his semi-truck while on the road.

Of course, as Lierman points out, he was acquitted by a jury of A.L.'s allegations, which we consider in this balancing test. Lierman argues that the State offered A.L.'s allegations in part to argue to the jury in B.L.'s case that the jury in the first case made a mistake, while this second jury could rectify it. But we are not persuaded by this: the jury was clearly instructed that "[t]he defendant [was] on trial only for the crimes alleged herein," and that fact was pointed out to the jury by both the State and Lierman's counsel.

Nor is there any distinction between the allegations for which Lierman was convicted and those for which he was never charged. Other than arguing the State could have charged him earlier, Lierman does not explain how this fact would

---

[12] See *State v. Kibbee, supra* note 10, 284 Neb. at 95, 815 N.W.2d at 891, quoting *State v. Stephens*, 237 Neb. 551, 466 N.W.2d 781 (1991).

prevent the use of the allegations per § 27-414. That statute allows conduct to be admitted, not convictions.

There is no merit to Lierman's first assignment of error.

## 2. Evidence of Alternative Reasons
### for B.L.'s Unhappiness

### (a) Standard of Review

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[13] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[14]

### (b) Background

In his second assignment of error, Lierman argues that during the State's examination of B.L., it opened the door to the introduction of specific evidence that when considered together, showed that B.L. was not happy and that it was this unhappiness, and not any alleged sexual abuse, that resulted in B.L.'s attempted suicide. At issue was evidence that B.L. was (1) caught using the computer to access an adult dating website, (2) using social media to arrange a meeting with a boy her age, (3) using a tablet computer to access adult-oriented websites on dates when Lierman claims he was out of town, and (4) being bullied at school.

The district court sustained the State's objection to Lierman's attempts to present evidence of these instances.

### (i) Use of Adult Dating Website

An offer of proof was made wherein Julie would have testified that sometime in 2013, she was on the family computer

---

[13] *State v. Kibbee, supra* note 10.

[14] *Id.*

and noticed that B.L. had left her email account open. Julie discovered that B.L. had been creating a profile on a dating website. In response, Lierman and Julie summoned the county sheriff to explain to B.L. the dangers of this type of activity. Lierman also wanted to offer a portion of B.L.'s deposition in which she testified that she had not had contact with anyone on the website, but that she had only created a profile using false information. In her deposition testimony, B.L. testified that Lierman sexually assaulted her after Julie went to work the night that B.L.'s actions were discovered. In support of admitting this evidence, Lierman argued it was part of the res gestae of the crimes charged, because B.L. claimed that it led directly to another sexual assault.

The district court declined to admit this evidence, finding the implication was that B.L. had engaged in some type of sexual misconduct, violating Neb. Rev. Stat. § 27-412 (Reissue 2016). In addition, the court sustained the State's objection that Lierman's cross-examination of B.L. on this point was improper under § 27-403 and Neb. Rev. Stat. § 27-608(2) (Reissue 2016).

### (ii) Social Media Message About
### Meeting With Classmates

A second offer of proof would have had Julie testify that one night when she was on the computer, an instant message for B.L. appeared. The message indicated that B.L. was attempting to arrange to meet classmates, including a particular boy, after school to go to another location and that this was a violation of the rules of the Lierman household. The district court refused to admit this evidence as well, again on the basis of §§ 27-412 and 27-608(2).

### (iii) Websites Accessed on Tablet Computer

A third offer of proof involved a tablet computer used by B.L. Law enforcement examined the tablet and determined that it was used on several occasions to access pornographic websites. The offer of proof also established that there was

no way to know who had accessed the websites, but Lierman argued that his trucking logs would have established that it was not him. The district court found that this evidence was not relevant, because it could not be established that B.L. was the person who accessed the websites, and that in any case, the evidence was inadmissible under § 27-412.

### (iv) Unhappiness at Home and School

In a final offer of proof, Lierman asserted that if admitted, testimony from family members would show that B.L. was being bullied at school. In addition, this testimony would show that B.L. was unhappy at home because, as the prior incidents indicated, she had trouble following the rules of the household. The district court found that the matter of B.L.'s not liking or following the rules of the household to be irrelevant and in violation of § 27-608(2). As for the bullying at school, the district court concluded it was not relevant, because B.L. had changed schools by the time of the suicide attempt.

### (c) Analysis

Lierman's argument on appeal with respect to these various pieces of evidence is that the State opened the door to B.L.'s credibility and that he was then permitted to cross-examine her with respect to these incidents. "Opening the door" is a rule of expanded relevancy which authorizes admitting evidence that would otherwise be irrelevant in order to respond to (1) admissible evidence which generates an issue or (2) inadmissible evidence admitted by the court over objection.[15]

Lierman contends that the State opened the door to B.L.'s truthfulness in the following exchange between the State's attorney and B.L.:

Q. Another thing, during the — those times you described and generally, those things you described with . . . Lierman and you, did . . . Lierman always call you by his own name — by your own name, rather?

A. No.

---

[15] *State v. Harrold*, 256 Neb. 829, 593 N.W.2d 299 (1999).

Q. Explain, please.

A. Yeah. Well, I have nicknames, I mean, like Nanna and stuff.

Q. Speak up.

A. Like Nanna. But when he got mad at me or I did something like lie about doing the dishes and I didn't do them, he would call me . . .

Q. What I'm talking about is . . . during the times sex things were going on, was there another name used?

Lierman additionally argues that the State opened the door by offering into evidence exhibit 201, which he identified as a letter written to Lierman from B.L., detailing B.L.'s unhappiness and the bullying she was facing at school.

In fact, exhibit 201 is a photograph of a piece of lined notebook paper that repeats the sentence, "I will respeck [sic] my mom and dad." This exhibit was initially offered, but the State acknowledged that it was done so in error and it was withdrawn, though it had been published to the jury. (The letter was not sent back with the jury during its deliberations.) The letter from B.L. to Lierman was actually exhibit 246, and it was offered into evidence. With the exception of the salutation and the signature, which B.L. said did not look like her handwriting, B.L. agreed that she wrote the letter.

Lierman argues only about the letter from B.L. to Lierman, not about the "respeck" lines. But the record shows that this letter was offered and admitted and that B.L. was questioned about it. As for the other incident—the questioning about B.L.'s lying about doing the dishes—such did not "open the door" to questions about B.L.'s credibility. B.L.'s answer appears to be born of not understanding the question asked of her, and the State immediately redirected her testimony. Moreover, the specific instances of B.L.'s misbehavior were not relevant to B.L.'s truthfulness, because as the district court noted, those instances are excludable as specific instances of misconduct, or at worst, attempting to impugn B.L. by implying that she was involved in risky sexualized behavior.

Because the State did not open the door to the evidence which Lierman argues is admissible, there is no merit to Lierman's second assignment of error.

### 3. Sufficiency of Evidence

#### (a) Standard of Review

[6] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of the witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[16]

#### (b) Analysis

In his third assignment of error, Lierman assigns that the district court erred in finding that the evidence was sufficient to convict him. Lierman argues that without the evidence pertaining to the allegations made by B.L., "it is highly unlikely that [Lierman] would have been convicted. The evidence pertaining to the allegations made by B.L. was very weak with no real physical evidence present and frequently changing allegations by B.L. during the course of the case."[17] In addition, Lierman asserts that "[t]here [was] no specificity in [B.L.'s] responses" as to the dates of the alleged offenses and that such was necessary because the only distinction between many of the offenses was B.L.'s age at the relevant time.[18]

We find that the evidence was sufficient to support Lierman's convictions. B.L. testified that she was sexually assaulted by Lierman during the relevant time periods. This court does not

---

[16] *State v. Thomas*, 303 Neb. 964, 932 N.W.2d 713 (2019).

[17] Brief for appellant at 44.

[18] *Id.*

reweigh that evidence. Lierman's assignment of error to the contrary is without merit.

## 4. Recusal

### (a) Standard of Review

[7] A recusal motion is initially addressed to the discretion of the judge to whom the motion is directed.[19]

### (b) Analysis

In his fourth assignment of error, Lierman contends that the district court erred in not recusing itself because of an ex parte communication with the State and because it presided at a hearing regarding a grant of immunity given to Julie without giving Lierman notice.

[8-11] An ex parte communication occurs when a judge communicates with any person concerning a pending or impending proceeding without notice to an adverse party.[20] A judge who initiates or invites and receives an ex parte communication concerning a pending or impending proceeding must recuse himself or herself from the proceedings when a litigant requests such recusal.[21] A judge should recuse himself or herself when a litigant demonstrates that a reasonable person who knew the circumstances of the case would question the judge's impartiality under an objective standard of reasonableness, even though no actual bias or prejudice was shown.[22] A party alleging that a judge acted with bias or prejudice bears a heavy burden of overcoming the presumption of judicial impartiality.[23]

The first motion to recuse, filed on January 29, 2016, details events from earlier that same day. It appears there was an issue

---

[19] *Thompson v. Millard Pub. Sch. Dist. No. 17*, 302 Neb. 70, 921 N.W.2d 589 (2019).

[20] *State v. Thompson*, 301 Neb. 472, 919 N.W.2d 122 (2018).

[21] *Id.*

[22] *Thompson v. Millard Pub. Sch. Dist. No. 17, supra* note 19.

[23] *Id.*

surrounding the taking of B.L.'s deposition. One of the State's attorneys went to the district court's courtroom while the judge was on the bench regarding matters in unrelated cases. At the conclusion of those matters, but before the court had adjourned, the State's attorney indicated that the parties were having an issue with the deposition and sought a hearing. The district court then asked his staff to contact defense counsel to see whether a hearing could be set for later that day. Defense counsel refused to do so based on just the State's oral motion, then filed the recusal motion.

A hearing was held on this motion on February 1, 2016. At the hearing, the court declined to hear evidence, but instead explained the facts, as set forth above, and denied the motion. During the hearing, Lierman made an oral motion to recuse, which the court requested be filed as a written motion.

A second hearing on the motions to recuse was held on February 5, 2016. The operative motion at that hearing was the amended second motion to recuse, which sought the district court's recusal because the court had failed to give notice to Lierman that his wife, Julie, was being offered immunity for her testimony. Following that hearing, the district court denied the motion to recuse, reasoning that Lierman was not entitled to notice of any grant of immunity to Julie.

We turn first to the issue of B.L.'s deposition. The record indicates that the State, not the court, initiated the conversation and that the conversation pertained to scheduling a hearing. The court's response was to have defense counsel contacted about the issue. This is not an improper ex parte communication that would give rise to a need for a judge's recusal.[24]

Nor was there error with respect to the grant of immunity to Julie. The language of the relevant statute, Neb. Rev. Stat. § 29-2011.02 (Reissue 2016), and our case law interpreting that statute,[25] provides that because the Legislature "has given courts the power to immunize a witness solely upon the request

---

[24] Neb. Rev. Code of Judicial Conduct § 5-302.9.

[25] *State v. Phillips*, 286 Neb. 974, 840 N.W.2d 500 (2013).

of the prosecutor, it is not a power the court can exercise upon the request of the defendant or upon its own initiative."[26] The court is not obligated under § 29-2011.02 to notify a defendant when the State offers a witness immunity. As such, the district court did not show bias or prejudice against Lierman by failing to provide notice to him.

To the extent that Lierman is suggesting that the hearing in which Julie was given immunity might have been considered an ex parte communication, this argument is also without merit. The hearing took place in a separately docketed case, in open court, and on the record. There is no merit to Lierman's fourth assignment of error.

### 5. EXCESSIVE SENTENCES

### (a) Standard of Review

[12,13] An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court.[27] Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[28]

### (b) Analysis

In his fifth assignment of error, Lierman contends that the district court's sentences were excessive. Lierman argues that he is obese and in poor health, with no record of prior sexual assault convictions, and that at his age, his sentence total of 70 to 140 years' imprisonment amounts to a life sentence.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and

---

[26] *Id*. at 989, 840 N.W.2d at 514.

[27] *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019).

[28] *Id*.

(8) the violence involved in the commission of the crime.[29] The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life.[30]

We have reviewed Lierman's sentences and conclude that they were not excessive. Lierman was convicted of multiple counts of sexual assault of his adolescent daughter over a period of several years. The sentences were within statutory limits and were not an abuse of discretion. This assignment of error is without merit.

## 6. Subpoenas Duces Tecum

### (a) Standard of Review

[14] Statutory interpretation is a question of law, which an appellate court resolves independently of the trial court.[31]

### (b) Analysis

In his sixth assignment of error, Lierman assigns that the district court erred in quashing the subpoenas duces tecum served upon several witness set for deposition. Lierman argues that in addition to their testimony, he ought to be permitted to ask deponents to provide materials relevant to B.L.'s allegations. In quashing the subpoenas duces tecum, the district court found that there was no statutory authority for such a request in criminal cases and that the lack of this procedure did not violate the constitution. Lierman argues on appeal that he is "concerned with the possibility that one of the witnesses may have some information that the State does not request or does not hand over pursuant to discovery. In that respect, [Lierman] can not obtain such information."[32]

---

[29] *Id.*

[30] *Id.*

[31] *Griffith v. Nebraska Dept. of Corr. Servs.*, 304 Neb. 287, 934 N.W.2d 169 (2019).

[32] Brief for appellant at 51.

No reciprocal discovery order had been sought in this case as of the time of the issuance of these subpoenas, but a *Brady*[33] notice was filed. Lierman concedes that he does not accuse the State of failing to hand over *Brady* material.

Neb. Rev. Stat. § 29-1917(1) (Reissue 2016) provides for the issuance of a deposition subpoena in a criminal case:

> (1) Except as provided in section 29-1926, at any time after the filing of an indictment or information in a felony prosecution, the prosecuting attorney or the defendant may request the court to allow the taking of a deposition of any person other than the defendant who may be a witness in the trial of the offense. The court may order the taking of the deposition when it finds the testimony of the witness:
>
> (a) May be material or relevant to the issue to be determined at the trial of the offense; or
>
> (b) May be of assistance to the parties in the preparation of their respective cases.

Both § 29-1917(3) and Neb. Rev. Stat. § 29-1905 (Reissue 2016) similarly provide that the taking of the deposition of a witness "shall be governed in all respects as the taking of depositions in civil cases."

The general procedures to be used in issuing subpoenas in a civil case are set forth in Neb. Rev. Stat. § 25-1223 (Cum. Supp. 2018). Neb. Rev. Stat. § 25-1224(1) (Cum. Supp. 2018) provides:

> A subpoena commanding an individual to appear and testify at a trial or deposition may command that at the same time and place specified in the subpoena for the individual to appear and testify, the individual must produce designated documents, electronically stored information, or tangible things in the individual's possession, custody, or control. The scope of a command to produce documents, electronically stored information, or tangible

---

[33] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

> things pursuant to this section is governed by the rules of
> discovery in civil cases.

This section, when considered with §§ 29-1905 and 29-1917, forms the basis of Lierman's argument on appeal that "[t]he proceedings in taking the deposition of a witness pursuant to this section and returning it to the court shall be governed in all respects as the taking of depositions in civil cases."[34] Lierman suggests that the ability to seek "designated documents, electronically stored information, or tangible things in the individual's possession, custody, or control" is part of the procedure referenced in §§ 29-1905 and 29-1917.

Section 25-1223 generally sets forth the procedure for the issuance of trial and deposition subpoenas. The power to specifically issue a subpoena duces tecum is the topic of § 25-1224. It is § 25-1224(1) which explicitly notes that "[t]he scope of a command to produce documents, electronically stored information, or tangible things pursuant to this section is governed by the rules of discovery in civil cases."

The crux of Lierman's argument is that a subpoena duces tecum allows him to obtain records that he might not otherwise have known existed. But even assuming that the subpoena duces tecum is available in criminal cases in Nebraska, it is not intended to be used as a "'fishing expedition.'"[35] Generally, documents sought in such a way are subject to a showing of relevance and admissibility, with requested documents identified with adequate specificity.[36] Nebraska's rules of civil discovery provide that "the designation of the materials to be produced pursuant to the subpoena shall be attached to or included in the notice."[37]

---

[34] § 29-1917(3).

[35] *United States v. Nixon*, 418 U.S. 683, 700, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974).

[36] 2 Barbara E. Bergman & Nancy Hollander, Wharton's Criminal Evidence § 10:9 (15th ed. 1998 & Cum. Supp. 2019-20) (collecting cases).

[37] Neb. Ct. R. Disc. § 6-330(C)(1) (rev. 2016).

As an initial matter, we lack a complete record on this issue. The record before this court generally shows that Lierman sought deposition testimony and documents, but, with a few exceptions, the record does not include the pertinent notices of deposition or otherwise identify the witnesses upon whom notices were served. Moreover, Lierman failed to explain below or on appeal what documents he would have requested that witnesses bring to their depositions or what documents he believes they might have had in their possession, custody, or control. But without this showing, Lierman's subpoenas amount to no more than an impermissible fishing expedition.

For these reasons, we find no error in the district court's quashing of the subpoenas duces tecum, and Lierman's assignment of error is without merit.

### 7. Ineffective Assistance of Counsel

#### (a) Standard of Review and Propositions of Law

[15] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance.[38]

[16] When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record.[39] Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims.[40]

---

[38] *State v. Lee, supra* note 27.

[39] *Id.*

[40] *Id.*

[17,18] In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.[41] When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel.[42]

### (b) Analysis

In his final assignment of error, Lierman assigns that his trial counsel was ineffective by (1) failing to call certain witnesses, (2) not utilizing evidence of Lierman's driving logs to form an alibi defense, (3) failing to file a motion in limine to exclude evidence regarding B.L.'s difficulties at school and general unhappiness, (4) not objecting to the order in which the State presented its evidence, and (5) not objecting to the State's use of B.L.'s suicide attempts and ideation.

### (i) Failure to Call Certain Witnesses

Lierman first assigns that his counsel was ineffective in failing to call two particular witnesses: Dr. Ashutosh Atri, a doctor at the hospital where B.L. was admitted following her suicide attempt, and Dr. Hugo Gonzalez, another doctor who would have testified that B.L. never reported a sexual assault to him. Lierman alleges Atri would have testified that B.L. indicated early in her stay she was not a victim of sexual assault, that she participated in family counseling sessions, and, further, that

---

[41] *Id.*

[42] *Id.*

she made no allegations of sexual assault until she learned she might be discharged to go home soon.

There is nothing in the record to explain why counsel did not call Atri and Gonzalez. As such, we lack the record to determine this issue on direct appeal.

We additionally note that Lierman argues that his trial counsel was ineffective in failing to ask certain questions of B.L.'s aunt. But we need not consider that argument, because Lierman did not separately assign that failure as error.[43]

### (ii) Driving Logs as Alibi Defense

Lierman argues that his trial counsel erred in not pursuing an alibi defense through the use of Lierman's driving logs, which were apparently created by Lierman himself. Lierman claims those logs would have shown that he was on the road during some of the "relevant dates."

There is nothing in the record to explain why counsel chose not to introduce these driving records. As such, we lack the record to determine this issue on direct appeal.

### (iii) Failure to File Motion in Limine Regarding B.L.'s School and Home Difficulties

Lierman argues that trial counsel was ineffective in failing to file pretrial motions in limine regarding "evidence that would call into question the credibility of the State's witnesses."[44] Lierman contends that had trial counsel done so, counsel would have known what evidence would have been admissible versus inadmissible and would have been better prepared for trial.

Lierman has not sufficiently pled this allegation. He does not identify what evidence should have been subject to a motion in limine or which witness' credibility would have been

---

[43] See *In re Estate of Graham*, 301 Neb. 594, 919 N.W.2d 714 (2018).

[44] Brief for appellant at 54.

challenged by that evidence. As such, we find that this allegation of deficient conduct has not been pled with the specificity necessary to avoid a future procedural bar.

### (iv) Failure to Object to Order of State-Presented Evidence

Lierman next contends that his counsel was ineffective in failing to object to the order in which the State presented its evidence. Specifically, Lierman argues that at the § 27-414 hearing held prior to trial, the evidence of A.L.'s allegations was found by the trial court to be conditionally admissible dependent upon a showing of sufficient factual similarities and trial counsel should have objected when the State offered that evidence prior to showing those similarities. Lierman argues that "counsel should have objected to the sequence of the evidence being presented because the Court gave counsel the opportunity to force the State to produce evidence in another order than the one it was comfortable with."[45] We have a sufficient record to determine this issue on direct appeal, and we find that trial counsel was not ineffective.

First, we observe that Neb. Rev. Stat. § 29-2016 (Reissue 2016) sets forth the procedure that a trial court should follow in conducting a criminal trial. There is nothing in that section, nor does Lierman direct us to other law, that might suggest that a criminal defendant has any control, directly or otherwise, over the order in which the State presents its evidence.

Lierman suggests that he had the ability to dictate the sequence of the State's evidence had counsel objected and held the State to the district court's earlier order finding the State's § 27-414 evidence to be only conditionally admissible. But having reviewed the record as a whole, we conclude that the State made a sufficient showing as to the similarities between A.L.'s and B.L.'s allegations such that A.L.'s allegations

---

[45] *Id.*

were admissible. As such, Lierman cannot show that counsel was ineffective.

### (v) Failure to Object to State's
### Use of Lierman's Suicide Attempts

Finally, Lierman asserts that his trial counsel was ineffective for failing to object to the admission into evidence of Lierman's two suicide attempts. One attempt occurred during a standoff between him and law enforcement when he returned home from a trucking job to find that A.L. had accused him of sexual abuse. The second attempt occurred while he was in jail on those charges.

The record indicates that these issues were addressed at a pretrial hearing on Lierman's motions to suppress, in limine, and for a determination of relevancy. The trial court, in its order largely denying Lierman's motions, found that the events were relevant and were admissible as evidence of Lierman's consciousness of guilt. In particular, Lierman now argues that while suicide attempts might be probative of "'conscious guilt,'" they also speak toward "potential mental illness," and that thus, the admission of this evidence was more prejudicial than probative.[46]

An analysis under § 27-403 consists of a balancing test, which is left to the sound discretion of the trial court.[47] That balancing test provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."[48]

We find that the district court did not abuse its discretion in admitting evidence of Lierman's suicide attempts and ideation. Both suicide attempts were made contemporaneous to A.L.'s

---

[46] *Id.* at 55.

[47] See *State v. Stubbendieck*, 302 Neb. 702, 924 N.W.2d 711 (2019).

[48] § 27-403. See *State v. Stubbendieck, supra* note 47.

allegations, one immediately prior to Lierman's arrest at a time when he was aware that he was about to arrested. The second attempt was made at the jail when Lierman was incarcerated after his arrest and immediately following a visit with members of his family.

It was not an abuse of discretion for the district court to conclude that Lierman's actions were probative of his guilt and that this outweighed any possible prejudice. We decline Lierman's invitation to conclude that a suicide attempt can never be probative of consciousness of guilt; indeed, the facts in this case show that these suicide attempts were probative of Lierman's consciousness of guilt.

Because the district court did not err in admitting the evidence, counsel was not ineffective for failing to object. There is no merit to Lierman's argument to the contrary.

## V. CONCLUSION

The judgment and sentences of the district court are affirmed.

Affirmed.

Freudenberg, J., not participating.

Cassel, J., concurring.

I write separately only to address Lierman's argument, which he makes at least implicitly, that the scope of discovery and, in particular, the scope of a subpoena duces tecum in a criminal case is as broad as in a civil case. He is wrong.

Civil and criminal cases have different limitations upon when depositions may be taken. In civil cases, depositions may be taken without leave of court, except within 30 days of service of summons.[1] And there are exceptions to the 30-day limitation.[2] In criminal cases, however, leave of court is always required.[3] Although this statute was amended in 2019, the same

---

[1] See Neb. Ct. R. Disc. § 6-330 (rev. 2016).

[2] See id.

[3] See Neb. Rev. Stat. § 29-1917(1) (Supp. 2019).

requirement for leave existed at all relevant times in the prosecution against Lierman.[4]

Section 29-1917 limits the scope of a discovery deposition in a criminal case in two significant ways. First, only a "person other than the defendant who may be a witness in the trial of the offense" may be deposed.[5] In other words, if the person could not possibly be called as a witness at the trial in the criminal case, no deposition is permitted.

The second limitation is more significant. A court is permitted to order the taking of a deposition in a criminal case only if the witness' testimony "[m]ay be material or relevant to *the issue to be determined at the trial of the offense*" or "[m]ay be of assistance to the parties in the preparation of their respective cases."[6] In a criminal case, the elements of the charged crime or crimes define the issues.[7] Thus, a court may grant leave to take a criminal case deposition only where the testimony would be material or relevant to the existence or nonexistence of an element of a charged offense or where the testimony would assist a party in preparing its case.

In contrast, the scope of discovery in civil cases extends much further. Generally, in a civil case, parties may obtain discovery "regarding any matter, not privileged, which is relevant to the *subject matter involved* in the pending action."[8] Further, the rule adds, "It is not ground for objection that the information sought will be inadmissible at the trial if *the information sought appears reasonably calculated to lead to the discovery of admissible evidence*."[9] Obviously, the civil discovery rule articulates a much wider scope for inquiry than is permitted in a criminal case.

---

[4] See § 29-1917 (Reissue 2016).

[5] § 29-1917(1).

[6] § 29-1917(1)(a) and (b) (emphasis supplied).

[7] See *State v. George*, 228 Neb. 774, 424 N.W.2d 350 (1988).

[8] Neb. Ct. R. Disc. § 6-326(b)(1) (emphasis supplied).

[9] *Id*. (emphasis supplied).

Neither statute upon which Lierman relies expands the scope of depositions in criminal cases. He cites two criminal procedure statutes: § 29-1917 and Neb. Rev. Stat. § 29-1905 (Reissue 2016). In both instances, his reliance is misplaced.

First, he reads too much into § 29-1905, which states: "The proceedings in taking the examination of such [deposition] witness and returning it to court shall be governed in all respects as the taking of depositions in all civil cases." In reading a penal statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.[10] The plain language of § 29-1905 applies the civil procedures to criminal cases only in "taking the examination" and "returning it to court." In the context of civil discovery depositions under § 6-330, the procedures of "taking" and "returning" would include subsections (c)[11] and (f).[12]

Second, the text of § 29-1905 predates discovery depositions in criminal cases. It was first enacted in 1873[13] and has not been amended since the 1943 codification.[14] The criminal case discovery statute, § 29-1917, in contrast, was initially adopted only in 1969.[15] Section 29-1905 simply does not speak to the scope of discovery permitted in a deposition in a criminal case.

Lierman's reliance on § 29-1917(3) fares no better. At the relevant times in the court below, this subsection stated only, "The proceedings in taking the deposition of a witness pursuant to this section and returning it to the court shall be

---

[10] *State v. Jedlicka, ante* p. 52, ___ N.W.2d ___ (2020).

[11] § 6-330(c) ("Examination and Cross-Examination; Record of Examination; Oath; Objections").

[12] § 6-330(f) ("Certification and Delivery by Officer; Copies; Notice of Delivery").

[13] Gen. Stat. ch. 58, § 463, p. 825 (1873).

[14] See § 29-1905 (1943).

[15] See 1969 Neb. Laws, ch. 235, § 6, p. 870.

governed in all respects as the taking of depositions in civil cases."[16] This language, like § 29-1905, is limited to the "taking" and "returning" of the deposition. It addresses procedural steps rather than the scope of discovery. In 2019, the Legislature appended the words, "including section 25-1223."[17] This was apparently done in light of a substantial rewrite of Neb. Rev. Stat. § 25-1223 (Cum. Supp. 2018) in 2017.[18] The changes in § 25-1223 speak mainly to the "nuts and bolts" of the procedures for issuance, service, and return of a subpoena. And nothing in the 2019 amendment of § 29-1917 to include provisions from § 25-1223 regarding "taking" and "returning" a deposition suggests, let alone dictates, any intention to modify the scope of inquiry permitted in a deposition in a criminal case.

These statutes, taken as a whole, demonstrate the Legislature's understanding that the issues in a criminal case are always circumscribed by the elements of the crime or crimes with which a defendant is charged. And the differences in scope and procedure prevent discovery from being used in a "fishing expedition" or an attempt to confuse the issues. Thus, while I agree with the outcome of the court's decision, I would squarely reject Lierman's attempt to judicially expand the scope of discovery in criminal cases beyond that clearly articulated by the Legislature.

---

[16] § 29-1917(3) (Reissue 2016).

[17] § 29-1917(3) (Supp. 2019).

[18] See 2017 Neb. Laws, L.B. 509, § 1.