IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. OGREN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

AARON E. OGREN, APPELLANT.

Filed November 30, 2021.    No. A-21-127.

Appeal from the District Court for Fillmore County: VICKY L. JOHNSON, Judge. Affirmed.

Michael J. Wilson, of Berry Law, for appellant.

Douglas J. Peterson, Attorney General, and Matthew Lewis for appellee.

PIRTLE, Chief Judge, and MOORE and WELCH, Judges.

PIRTLE, Chief Judge.

## INTRODUCTION

Aaron E. Ogren appeals from his plea-based conviction in the district court for Fillmore County. He alleges that his sentences are excessive and that his trial counsel was ineffective. Based on the reasons that follow, we affirm.

## BACKGROUND

Pursuant to a plea agreement, Ogren pled guilty to the following charges: theft by unlawful taking, a Class IIA felony under Neb. Rev. Stat. § 28-511(1) (Reissue 2016) (count I); two counts of prohibited sale of livestock, a Class III felony under Neb. Rev. Stat. § 54-1,123 (Reissue 2010) (counts II-III); three counts of attempted prohibited sale of livestock, a Class IV felony under § 54-1,123 and Neb. Rev. Stat. § 28-201(1)(b) (Cum. Supp. 2020) (counts IV-VI); and cruelty to animals, a Class IV felony under Neb. Rev. Stat. § 54-903 (Reissue 2010) (count VII).

- 1 -

The State alleged that Ogren ran a feedlot where he would care for and feed other ranchers' cattle. When an investigator visited the feedlot, he found over 220 cattle in various states of decay. Necropsies concluded the cattle died of malnutrition, treatable diseases, and exposure to the elements. The investigator also found that Ogren failed to return the cattle that were entrusted to his care, would swap out the cattle to be returned with other cattle, and failed to purchase cattle for ranchers after they would provide him money to do so.

Following the plea hearing, the court ordered that a presentence investigation be completed. A sentencing hearing followed. The district court sentenced Ogren as follows: 15 to 20 years' imprisonment for count I; 4 years' imprisonment for count II; 4 years' imprisonment for count III; 2 years' imprisonment for count IV; 2 years' imprisonment for count V; 2 years' imprisonment for count VI; and 2 years' imprisonment for count VII. The district court ordered the sentences to be served concurrently. The court also ordered Ogren not to own or possess any livestock for 15 years.

## ASSIGNMENTS OF ERROR

Ogren assigns that the district court erred by imposing excessive sentences and that he was denied effective assistance of counsel in that his counsel failed to investigate witnesses with information relevant to the integrity of the investigation.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *Id.* In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## ANALYSIS

*Excessive Sentences.*

Ogren first assigns that the district court erred by imposing excessive sentences. Ogren was convicted of a Class IIA felony, two Class III felonies, and four Class IV felonies. The authorized penalty for a Class IIA felony is a maximum of 20 years' imprisonment and no minimum sentence of imprisonment; a Class III felony carries a maximum sentence of 4 years' imprisonment and 2 years' post-release supervision with no minimum sentence of imprisonment, but 9 months' post-release supervision if imprisonment is imposed; and a Class IV felony carries a maximum sentence of 2 years' imprisonment and 12 months' post-release supervision with no minimum sentence of imprisonment or post-release supervision. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020).

Ogren was sentenced to 15 to 20 years' imprisonment for the Class IIA felony (count I), 4 years' of imprisonment on each Class III felony (counts II and III), and 2 years' imprisonment on each Class IV felony (counts IV, V, VI, and VII). His sentences are all within the statutory limits and, therefore, will not be disturbed absent an abuse of discretion. See *State v. Blaha, supra.*

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Chairez*, 302 Neb. 731, 924 N.W.2d 725 (2019). The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Ogren acknowledges that the sentences fall within the statutory limits but argues that the court abused its discretion "by weighing the seriousness of the offense too heavily" and failing to consider several mitigating factors, specifically his assessment score showing he was a low risk to reoffend and his minimal criminal history. Brief for appellant at 7. Ogren's criminal history consists of only a theft by deception charge that was pending at the time of sentencing. The district court noted Ogren's lack of criminal history, but Ogren argues that the court failed to weigh this factor, as well as his low risk to reoffend, as heavily as it should have when determining his sentences.

At the sentencing hearing, the district court stated that it had received the presentence investigation report. The district court heard comments from the State and counsel for Ogren. It also received into evidence exhibit 1, a printout of prior civil proceedings against Ogren involving similar issues, and exhibit 2, handwritten accounting notes taken from Ogren's house. Following the parties' arguments and receipt of exhibits, the district court stated as follows:

> The Court will enumerate the circumstances that have led to its decision: [Ogren]'s age. His family situation. He was in a relationship with [a woman] for 10 years. According to the presentence of [the woman], he's controlling. It's clear that he did control the money, and she had nothing other than $20 a week. There were allegations of physical abuse. [Ogren] was engaged in the purchase, care and sales of cattle for investors, many of which were forced into -- not forced, but were put into a position that they had little choice but to farm out their cattle due to droughts in Colorado, et cetera. He did not sell the cattle when instructed to do so. Over 220 dead cattle and the horse. The surviving cattle had very poor conditions. This is a matter of astonishment that any person would let this sort of thing continue time after time after time, and as Exhibit 1 and other people have noted, shows this is an issue that has come to the court system as early as 2013 when there was a replevin action filed against [Ogren] to get cows back to the owners. There are civil judgments, as noted by [the State], approaching half a million dollars. He does have no prior criminal history of note, other than he does have a theft by deception charge pending in York County. The LS/CMI of seven. There is no recommendation for probation. The Court finds that the restitution figures requested by the State are fair and reasonable, but as the Court will enumerate in a few minutes, [Ogren] has no ability to pay even just based upon the prior civil cases. He should have figured out a long time ago he couldn't manage cattle. This is one of those cases, other than a couple of murder cases, that this Court finds to be

egregious. [Ogren] takes no responsibility -- little responsibility in whatever brought him to this point, whether it is the fact that he got out of control by taking on too much or he was actively engaged in a criminal enterprise. It really doesn't matter. What we have are 220 dead cows and a dead horse mired in mud. The Court finds he is not a fit candidate for probation. On Count I -- oh, the Court will also say that it understands the financial devastation that this placed on the victims, as enumerated previously by [the State]. Some parties had to sell real estate that had been in the family for years. Others had to use inheritances just to get out of debt. There is no excuse for [Ogren]'s actions.

The district court considered Ogren's criminal history as well as his risk assessment score (LS/CMI score) of seven, indicating a low risk to reoffend. It also found Ogren's actions were "egregious" based on the number of dead cattle and the poor conditions the surviving cattle were living in. It considered that Ogren had been engaged in the same or similar conduct for years as indicated by a replevin action in 2013 and prior civil actions against Ogren. Further, the court found that Ogren's actions have had severe financial repercussions on the victims and he will never be able to compensate them in any significant way, and he has failed to take responsibility for his actions. Based on the record before us, the district court took the appropriate factors into consideration when sentencing Ogren and there is no indication it considered any inappropriate or improper factors. Accordingly, it cannot be said that the district court abused its discretion or that the sentences imposed were excessive.

*Ineffective Assistance of Counsel.*

Ogren next assigns that his trial counsel provided ineffective assistance. Ogren has different counsel on direct appeal than he did at trial. When a defendant's counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, whether an attorney's representation was deficient depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *State v. Blaha, supra*. When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal depends upon the sufficiency of the record to address the claim to determine whether a defense counsel's performance was deficient and whether the defendant was prejudiced by the

alleged deficient performance. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020). The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.* When reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance, and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Hibler*, 302 Neb. 325, 923 N.W.2d 398 (2019).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). General allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal. *State v. Weathers*, 304 Neb. 402, 935 N.W.2d 185 (2019).

Ogren argues that his trial counsel was ineffective in that he "fail[ed] to investigate witnesses with information relevant to the integrity of the investigation" that resulted in his arrest. Brief for appellant at 3. He claims that "[a]fter entering his pleas in this case, [he] learned information concerning undue influence exerted by [the victims] over the investigation" that led to his arrest, and that "[t]he influence exerted by these witnesses compromised [the] investigation." *Id.* at 16. As a result, he blames his trial counsel for failing to pursue any corroborating information concerning the undue influence prior to Ogren entering his pleas, and that he was denied the opportunity to see police reports and other evidence against him that would have allowed him to discover the undue influence prior to entering his guilty pleas.

We conclude that Ogren has not sufficiently pled his claim of ineffective assistance of counsel. He alleges that his trial counsel should have investigated witnesses regarding the "undue influence" they exerted over the investigation. He also alleges that he was not given access to certain discovery. However, he fails to explain what information the victims had that was "relevant to the integrity of the investigation" or what his counsel would have learned had he pursued any corroborating information concerning the undue influence. Further, he does not explain the nature of the "undue influence" or how it tainted the investigation. He also failed to state who or why he was denied access to discovery and what specific documents or what information was in the discovery material that would have made him aware of the undue influence prior to the plea hearing. Ogren has failed to allege sufficient factual allegations of conduct to constitute deficient performance by trial counsel. See *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018).

## CONCLUSION

We conclude that the district court did not abuse its discretion in sentencing Ogren and his sentences are not excessive. We also conclude that Ogren's ineffective assistance of counsel claim was not sufficiently pled. Accordingly, Ogren's convictions and sentences are affirmed.

AFFIRMED.