IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


STATE V. FOSTER


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STATE OF NEBRASKA, APPELLEE,

V.

JESSE T.J. FOSTER, APPELLANT.


Filed December 7, 2021.    No. A-21-452.


Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Jonathan M. Braaten, of Anderson, Creager & Wittstruck, P.C., L.L.O, for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.


RIEDMANN, BISHOP, and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Jesse T.J. Foster pled no contest to and was found guilty of one count of conspiracy to commit robbery. The Lancaster County District Court sentenced him to 24 to 28 years' imprisonment. On appeal, Foster claims that the district court imposed an excessive sentence and that his trial counsel was ineffective. We affirm.

## BACKGROUND

On August 5, 2019, the State filed a criminal complaint in the county court for Lancaster County charging Foster with three counts: counts I and III, first degree murder, a Class IA felony, in violation of Neb. Rev. Stat. § 28-303 (Reissue 2016); and count II, use of a firearm to commit a felony, a Class IC felony, in violation of Neb. Rev. Stat. § 28-1205(1)(c) (Reissue 2016). The case was subsequently bound over to the district court.

Pursuant to a plea agreement, the State filed an amended information in the district court on October 16, 2020, charging Foster with one count of conspiracy to commit robbery, a Class II felony, in violation of Neb. Rev. Stat. §§ 28-202 and 28-324 (Reissue 2016); Foster pled no contest to the single count in the amended information. The following factual basis was provided by the State:

On July 24th of 2019, approximately 3:46 a.m., Lincoln police officers were detailed, along with Lincoln Fire Department, to a shooting at [address on] South 26th Street, here in Lincoln, Lancaster County, Nebraska.

Officers, upon arrival, did locate [the victim] in a bedroom located on the second floor, to be deceased. She appeared to have at least two gunshot wounds to her chest. A police officer located spent shell casings in the same room.

[The victim's] boyfriend and her five minor children and another child were also in the residence during this incident.

[The victim's] boyfriend was interviewed. He indicated he was sleeping in the bedroom with [the victim] when he was awakened by a loud bang and screaming. He said two males appeared in the bedroom and they both were armed with handguns. He said the male said, "Open the closets and give us the shit. Don't move or I'll blow your head off." He said one of the males was holding a gun to his forehead for a short time, then he heard a struggle and multiple gunshots. The suspects then left the home and he called 911.

He described the parties responsible as black males, one approximately six foot tall with dreadlocks; the second was shorter, around 5'9".

He said both displayed handguns and covering [sic] their faces. He said the shorter male was the one that got on top of him and pointed the gun at his forehead.

Also on July 24th, 2019, at approximately 3:50, a black male party was dropped of [sic] outside of the emergency room of [a named hospital and street address] here in Lincoln, Lancaster County, Nebraska. Security video from the hospital showed a 2018 Jeep Renegade and a dark colored 2010 Ford Fusion arrive at the hospital. Four individuals are captured on the video.

Eventually, Mr. Foster was identified as one of the individuals at the hospital. The individual dropped off was eventually identified as Martae Green. He died from a single gunshot wound to his groin area.

On July 24th of 2019, the police did interview the owner of the Jeep seen in the security video. She reported that on the afternoon of July 23rd, 2019, she was contacted by . . . Green about borrowing her vehicle to go to Lincoln. She said she met up with Mr. Green and he had another black male with him who had the nickname J Rock. That individual was subsequently identified as . . . Foster. They said they were going to go pick up Mr. Green's brother and go to Lincoln.

Eventually, Mr. Foster was arrested, as a result of this investigation. And, as noted, he did enter into a cooperation agreement. He has given multiple statements, including a deposition.

He reports that on July 23rd, 2019, he was in Omaha, Nebraska, and did meet up with . . . Green. Mr. Green inquired if he . . . knew of any licks. "Licks" is a reference to a

- 2 -

crime that can lead to financial gain. Mr. Foster tried to convince Mr. Green to participate in some white collar type activity, credit card fraud, forgeries and things of that nature.

Mr. Green said, no, he was interested in a robbery.

Therefore, Mr. Foster told him he should contact Rubin Thomas, who knew of such a lick or robbery in Lincoln.

They, thereafter, did pick up Charles Gresham and proceed to Lincoln.

Eventually later that evening, approximately 3:30 . . . a.m., the two vehicles did leave, with the Jeep following them. Mr. Foster indicated he thought he was going to be dropped off at his girlfriend's house, but then later realized they were in the area of this 26th and South Street residence. He asked Mr. Thomas what was going on.

He said they were going to do the lick.

Mr. Foster indicated he didn't want to be involved and got out of the vehicle and started to walk away.

A short time later, both vehicles pulled back up to him and he was asked to drive the Jeep, which contained . . . Green, to the hospital, which is then picked up on the security video.

Eventually, Mr. Foster did take . . . Gresham back to Omaha, then returned to Lincoln and dropped the Jeep off at a hotel on North 27th Street.

These events all occurred in Lancaster County, Nebraska.

The district court accepted Foster's no contest plea and found him guilty of conspiracy to commit robbery. The case was thereafter set for sentencing.

After a hearing held on May 25, 2021, the district court sentenced Foster to 24 to 28 years' imprisonment with credit for 344 days already served.

Foster appeals.

## ASSIGNMENTS OF ERROR

Foster claims that his sentence of 24 to 28 years' imprisonment is excessive and that his trial counsel was ineffective by failing to make compelling arguments to show why his sentence is excessive compared to the sentence of a codefendant.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## ANALYSIS

### EXCESSIVE SENTENCE

Foster's conviction for conspiracy to commit robbery is a Class II felony under §§ 28-202 and 28-324. A Class II felony is punishable by imprisonment for a minimum of 1 year and a maximum of 50 years. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020). Foster was sentenced to 24 to 28 years' imprisonment; his sentence is within the statutory range.

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense and (8) the violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Foster was 23 years old at the time of sentencing. He has some juvenile history which we will not recount here. His prior adult criminal history includes convictions for: robbery in 2017 (3 to 5 years' imprisonment); injuring or destroying property of another in 2017 ($250 fine); and third degree assault in 2017 (6 to 9 months' imprisonment).

The probation officer conducted a "Level of Service/Case Management Inventory" as part of the presentence investigation report (PSR). Foster was assessed as a "high risk to re-offend." He scored "very high risk" in the criminogenic risk factor domains for education/employment, companions, and antisocial pattern. He scored "high risk" in the domains for criminal history and leisure/recreation. He scored "medium risk" in the domain for procriminal attitude/orientation. He scored "low risk" in the domains for family/marital and alcohol/drug problem.

At the sentencing hearing, Foster's counsel argued that Foster understood "the seriousness of this offense." He described that when the other individuals involved arrived to the victim's residence, Foster "walked away, partly because he was fearful of what ended up happening," although Foster "became involved again" when he drove Green to the hospital. Foster's counsel asked the district court to impose a sentence similar to the sentence of 12 to 18 years' imprisonment imposed on a codefendant in this case identified as "Mr. LeBlanc." Counsel noted that LeBlanc "was present for both the failed burglary attempt, which he pled to, and the robbery" while "Foster was not part of the attempted burglary in this case." Foster also personally addressed the court, and he expressed remorse for his actions and accepted "responsibility and accountability for [his] part" in this case.

The district court noted that Foster was "on parole at the time of this offense" for "a robbery, where [he] robbed someone at gunpoint for cash." The court saw Foster's "role as more significant than" LeBlanc's, describing that Foster "helped plan . . . and participated in [the robbery], up to the point of going into the home." Stating that it had considered the relevant sentencing factors, the court sentenced Foster as previously set forth.

In his brief on appeal, Foster primarily contends that his sentence in this case should have been similar to that of LeBlanc's sentence of 12 to 18 years' imprisonment. He also argues that while his "involvement in this offense was serious," brief for appellant at 10, it was his acquaintance Thomas "who facilitated the robbery, rather than Foster." *Id.* at 12.

We first note that, as the State points out, the PSR indicates that LeBlanc was convicted of a Class IIA felony and was therefore subject to a different sentencing range. See § 28-105. Further, the mere fact that a defendant's sentence differs from that imposed on a coperpetrator does not in and of itself make the defendant's sentence an abuse of discretion, as the court must consider each defendant's life, character, and previous conduct in imposing the sentence. *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004). While the circumstances of Foster and LeBlanc may share similarities, as Foster argues on appeal, the sentence imposed on an individual defendant is necessarily a subjective judgment by the trial judge. See *State v. Lierman, supra*. As we described, the district court found Foster more culpable than LeBlanc for his role in this case, and this determination is consistent with Foster's longer sentence.

Having considered the relevant sentencing factors and facts in this case, we find that Foster's sentence was not excessive or an abuse of discretion. See *State v. Lierman, supra* (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion by trial court).

### INEFFECTIVE ASSISTANCE OF COUNSEL

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha, supra*. Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Foster has different counsel on direct appeal. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *Id.* Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *State v. Lierman, supra*. A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

In order to know whether the record is insufficient to address assertions on direct appeal that trial counsel was ineffective, appellate counsel must assign and argue deficiency with enough particularity (1) for an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) for a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.* When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded

of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

Thus, in reviewing Foster's claims of ineffective assistance of counsel on direct appeal, we decide only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. See *id.*

Foster claims that his trial counsel was ineffective in failing to make "compelling arguments as to why Foster's sentence should be similar" to that of LeBlanc's sentence of 12 to 18 years' imprisonment. Brief for appellant at 14. He argues in part that trial counsel failed to show the similarities between his role and LeBlanc's role in this case. Foster further asserts that counsel "failed to note there were prior robbery attempts on the victim perpetrated by [Thomas and LeBlanc]" and that Foster was not present during any of those prior attempts. *Id.*

We first note that Foster's trial counsel requested that the district court sentence Foster to a similar period of imprisonment as LeBlanc for his role in the robbery, and counsel highlighted Foster's effort to "walk[] away" when he recognized the robbery was about to occur. Further, as pointed out by the State in its brief, the PSR contains a letter from Foster's trial counsel to the district court asking the court to consider several items in imposing Foster's sentence, including Foster's cooperation with law enforcement, his upbringing and history with substance abuse and mental health issues, and the sentences imposed in "cases similar to" Foster's handled by his trial counsel's office. In addition to this letter from his trial counsel, the PSR also contains multiple letters of support written on Foster's behalf presented to the district court. While trial counsel's argument at the sentencing hearing was brief, the record shows substantial efforts by trial counsel to obtain a favorable sentence for Foster.

Even if the actions taken by Foster's trial counsel amounted to deficient performance, Foster was not prejudiced in this case. To the extent that Foster argues that trial counsel was deficient in failing to note the "prior robbery attempts on the victim perpetrated" by Thomas and Leblanc in which Foster was not involved, brief for appellant at 14, we observe that the PSR contains information regarding those prior attempted robberies. Given that this information was presented to the district court, Foster cannot show prejudice stemming from his counsel's failure to reference those attempted robberies at the sentencing hearing. We also note the district court was conscious of the comparative roles of Foster and LeBlanc, as evidenced by the trial judge's conclusion that Foster's role was "more significant" than LeBlanc's. Based on the trial judge's assessment, the similarities and differences in the roles of Foster and LeBlanc were known to the court. Foster cannot demonstrate prejudice resulting from the absence of further comparison between Foster and LeBlanc. Accordingly, Foster's claim of ineffective assistance of trial counsel fails.

We also note that Foster appears to argue that trial counsel was ineffective when "trial counsel indicated to [Foster] that he was likely to receive less time, meaning less than ten (10) years, if he entered a plea," and this advice "influenced his decision to ultimately enter into a plea deal." Brief for appellant at 14. However, Foster did not specifically assign as error counsel's

ineffectiveness in so advising him, and we accordingly do not consider this argument on appeal. See *State v. Mrza*, 302 Neb. 931, 926 N.W.2d 79 (2019) (to be considered by appellate court, alleged error must be both specifically assigned and specifically argued in brief).

## CONCLUSION

For the reasons stated above, we affirm Foster's sentence. Additionally, Foster's ineffective assistance of trial counsel claim fails, specifically, his claim that his trial counsel was ineffective for failing to make compelling arguments at sentencing comparing his circumstances to those of a codefendant.

AFFIRMED.