IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. MONTOYA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DAVID L. MONTOYA, APPELLANT.

Filed August 6, 2024.    No. A-24-050.

Appeal from the District Court for Lancaster County: SUSAN I. STRONG, Judge. Affirmed.

Steffanie J. Garner Kotik, of Kotik & McClure Law, for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

PIRTLE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

David L. Montoya pled guilty to one count of "Possession of a Controlled Substance (Methamphetamine)" and one count of "Possession of Money to be Used Violating [Neb. Rev. Stat. §] 28-416(1)." The Lancaster County District Court sentenced him to concurrent terms of 24 months' probation, but later revoked his probation and resentenced him to an aggregate of 3 years' imprisonment. Montoya appeals, claiming that his sentence was excessive because he was not given the proper amount of credit for time served and that his trial counsel was ineffective. We affirm.

- 1 -

## II. BACKGROUND

### 1. Probation, Alleged Violations, and Motion to Revoke

On June 22, 2023, Montoya was sentenced to 24 months' probation on his convictions for possessing a controlled substance (methamphetamine) and possessing money to be used violating § 28-416(1); both offenses were class IV felonies.

On July 27, 2023, Montoya's probation officer, Julie Ernst, filed an "Alleged Probation Supervision Violation," claiming that Montoya violated a condition of his probation that required him to report in writing and/or in person during the term of probation as directed by the court or probation officer. In both the "Alleged Probation Supervision Violation" and the "Abscond Affidavit" filed that same day, Ernst alleged as follows. Montoya had not reported to probation since July 10, "when he reported for drug testing which was positive for methamphetamine." Montoya failed to report to a scheduled meeting on July 10. Ernst attempted a home visit on July 12, but the owner of the home advised that Montoya did not reside at the home, had not been there in weeks, and was not allowed back in the home. Ernst attempted to call Montoya on July 21 at his last known number but was not able to reach him and had not received a return call. She listed six specific dates that Montoya missed drug testing, and three specific dates that he did not report to "Pre-Treatment."

On July 28, 2023, the State filed a "Motion for Revocation of Probation," alleging that Montoya intentionally violated one or more of the terms and conditions of his probation by "[f]ailing to report in writing and/or in person during the term of Probation Supervision as directed by the Court or probation officer after numerous attempts to contact or locate, and presumed to have absconded."

After Montoya failed to appear for arraignment on the motion for revocation of probation on August 9, 2023, the district court issued a bench warrant for his arrest; the bench warrant was filed the next day.

On September 22, 2023, the State filed an "Amended Motion for Revocation of Probation," additionally alleging that Montoya intentionally violated one or more of the terms and conditions of his probation by "[f]ailing to not violate any laws and to refrain from unlawful or disorderly conduct or acts injurious to others."

On October 2, 2023, probation officer Ernst filed a "Supplemental Alleged Probation Supervision Violation," claiming that Montoya violated a condition of his probation that required him to not violate any laws and refrain from disorderly conduct or acts injurious to others. Ernst alleged that Montoya was: cited and released by the Lincoln Police Department on August 28 for third degree assault and disturbing the peace; and "cited and lodged, transferred to hospital" by the Lincoln Police Department on September 18 for "Possess Controlled Substance," "Tamper with Physical Evidence," "Criminal Possession of Financial Transaction Device," "Criminal Trespass, 1st Degree," "Obstructing a Peace Officer," and "Theft by Receiving $0-500." The citations and police reports were attached.

A preliminary hearing on the revocation of probation was held on October 25, 2023. Montoya was "present by video," and was represented by counsel who appeared in person. Counsel said, "I haven't had a chance to speak with Mr. Montoya regarding this," and then asked Montoya, "[A]re you wanting to proceed with preliminary hearing, or are you wanting to waive

that and keep the plea offer open that we discussed?" Montoya stated, "I want to proceed with preliminary hearing." Upon the request of the State, the district court took judicial notice of the order of probation from June 22, 2023. The court received into evidence exhibit 4, which contained: (1) a probable cause affidavit from the Lincoln Police Department stating that Montoya was arrested on September 20, 2023, for "Possess Controlled Substance," "Tamper with Physical Evidence," and "Criminal Possession of Financial Transaction Device"; and (2) a police report showing that in addition to the above crimes, Montoya was also cited for "Criminal Trespass 1st Deg," "Obstructing a Peace Officer," and "Theft by Receiving $0-500." The court also received into evidence exhibit 5, which contained the "Alleged Probation Supervision Violation" and "Abscond Affidavit" from July 2023. The court found that there was probable cause to believe that Montoya violated the order of probation. Arraignment and trial were scheduled for November 29. Following the preliminary hearing, Montoya posted bond and was released from custody. On November 7, the court issued a bench warrant for Montoya's arrest for failing to abide by the conditions of his bond. Montoya was arrested on November 9.

On November 16, 2023, probation officer Ernst filed another "Supplemental Alleged Probation Supervision Violation," claiming that Montoya violated a condition of his probation that required him to not violate any laws and refrain from disorderly conduct or acts injurious to others. Ernst alleged that Montoya was cited and lodged by the Lincoln Police Department on November 9 for "Possess Controlled Substance." The citation and police reports were attached.

2. PROBATION REVOCATION TRIAL

On November 29, 2023, the probation revocation trial was held "via Zoom Conference." Montoya orally agreed to waive an in-person hearing. The district court took judicial notice of the order of probation entered on June 22, 2023. Probation officer Ernst was the only witness to testify.

Ernst testified that she met Montoya on June 27, 2023, at which time he provided a baseline drug test, and they went over the court order and probation paperwork. They discussed the requirements of Montoya's probation, that he was "required to report to probation meetings, was required to report to drug testing, and any required classes and evaluations that were set up for him"; Montoya acknowledged that he understood.

Ernst stated that Montoya "made a few more meetings" with her. Then, on July 10, 2023, he reported for drug testing but did not report for a meeting with her, and he missed a pretreatment class on July 11. After Montoya missed those appointments, Ernst called the phone number she was given for him, and she also went to his last known address and spoke to an individual at that home. The individual "indicated that Mr. Montoya had not been there in a few weeks and he was not allowed back at the home." Montoya had not made Ernst aware that he had a change of address. Ernst was not able to reach Montoya and he missed one additional meeting with her, six additional drug tests, and three pretreatment classes; "an abscond was filed 14 days after July 11th." Ernst stated that it was "[o]ur policy" that "[o]nce an abscond affidavit is filed with the court, we do not continue to try to contact them." She next had contact with Montoya in August "upon his arrest."

On cross-examination, Ernst was asked if she was aware that Montoya had suffered injuries that required surgery. She replied, "I am aware of that," "[h]e made that known in June [2023] when we met originally, but he did not give me specific dates on when he had appointments or anything of that sort." On redirect examination, Ernst was asked if she would have worked to

schedule meetings around Montoya's medical appointments if she had been made aware of them, and she responded, "Yes."

Following closing arguments, the district court found that Montoya violated his probation, said it would "like to get an update of that presentence investigation," and scheduled "disposition and possible sentencing" for December 20, 2023.

### 3. COUNSEL'S MOTION TO WITHDRAW

On December 11, 2023, Montoya's counsel filed a motion to withdraw. In that motion and at a hearing on December 19, counsel stated that Montoya informed him that he was going to pursue ineffective assistance of counsel. The district court discussed the matter with Montoya. Montoya confirmed that he was seeking to remove his counsel. But when questioned further by the State about whether he was seeking to discharge his counsel at this time, Montoya stated that he was "not asking anything," "[w]e have to wait 'til the decision is made and stuff like that, so I could file an appeal, and the appeal will be ineffective counsel"; counsel "jumped the gun and filed the motion to try to . . . remove himself." The court denied counsel's motion to withdraw and said they would proceed with disposition the next day.

### 4. DISPOSITION AND SENTENCING

Disposition and sentencing were held "via Zoom Conference" on December 20, 2023. The district court stated that, "[i]n light of the new charges and the information provided to the Court on that presentence update, the Court finds that the order of probation should be and hereby is revoked."

The matter proceeded to sentencing, and the district court asked if there were any comments. The following colloquy was had.

> [Montoya's counsel]: In speaking with Mr. Montoya, I see that the calculation, as far as time served, came to, by my calculation, 381 days in jail.
>
> In speaking with Mr. Montoya, he believes he should be given credit for 524 days in custody, and I'm going to list out the dates that he gave to me when we met yesterday: July 16th, 2021, to August 8th of 2021, which is 24 days; March 1st, 2022, to April 25th, 2023, is 421 days; September 20th of 2023, to October 26th, 2023, 37 days; November 9th of 2023, to December 20th, today, which would be 42 days.
>
> And so, Your Honor, we'd ask that his sentence be 524 days, and he be given credit for 524 days in custody.
>
> We'd ask that the counts run concurrently with each other, as well, Your Honor.
>
> THE COURT: Okay. Well, the information in the PSI indicates he had 303 days on this case, and then he had another 78 days . . . on credit that he could use toward this case or toward his County Court case. That would be a total of 381. And --
>
> [Montoya]: Your Honor, if I may? When I got arrested on this case, it was [on] July 16th of 2021. I bonded out [on] August 8th of 2021. Then I got picked up on this case in March, 2022, the first day, all the way to April, the end of April, like maybe the 25th, before I bonded out. So that alone, right there, is over 380 days, just that whole year, 14 months basically. And then I got sentenced in June.

- 4 -

Then they caught me in September, September 20th, all the way to the end of October, around the 26th. So there's another -- basically just another month. And then from November 9th to December 20th, that's another month, basically.

THE COURT: Well, are you being held right now on this case or the County Court case or both?

[Montoya]: I'm being held on this case, and I'm also being held, also, on the new possession charge.

THE COURT: County Court.

[Montoya]: The new possession charges I caught on November 9th.

THE COURT: Okay. All right. And, [State], is there anything you would like to say?

[State]: Judge, as to the jail credit, I would just go with what's in the PSI. I mean, I think it's pretty clear he's had a multitude of cases throughout, the time has been shared on different cases or he's been arrested on different things. So, I would submit on what's in the PSI as far as that.

The district court sentenced Montoya to consecutive sentences of 24 months' imprisonment for possession of a controlled substance and 12 months' imprisonment for possession of money to be used violating § 28-416(1). The court stated that Montoya had "381 days of credit for time served on this case." The court filed its written order memorializing the same on December 20, 2023.

Montoya filed both a pro se "motion [to] recalculate missing time credited" on December 22, 2023, and letter to the "District Court Clerk" on January 3, 2024, asking the district court to recalculate the time credit given to him because he believed that he should have received credit for more than 381 days for time served. No ruling on Montoya's motion appears in our record. Nevertheless, we have jurisdiction over this appeal. See *State v. Melton*, 308 Neb. 159, 953 N.W.2d 246 (2021) (appeal must be perfected within 30 days after entry of judgment; entry of judgment in criminal case occurs when signed sentencing order is file stamped by clerk of court; motion to modify criminal sentence not recognized in Nebraska's criminal procedure statues and is unavailable to defendant in criminal proceeding; when criminal defendant files motion not authorized and unavailable under Nebraska criminal procedure, motion is procedural and legal nullity, and any court order adjudicating such motion presents nothing for appellate review).

Montoya timely filed his notice of appeal on January 16, 2024.

## III. ASSIGNMENTS OF ERROR

Montoya assigns, reordered, that (1) the district court imposed an excessive sentence because Montoya was not given credit for all jail time he previously served, (2) trial counsel was ineffective for failing to investigate his claims that he was not getting credit for all of the time he previously served in this matter, and (3) trial counsel was ineffective for failing to discuss the case with him and properly prepare him for hearings.

## IV. STANDARD OF REVIEW

Whether a defendant is entitled to credit for time served and in what amount are questions of law, subject to appellate review independent of the lower court. *State v. Wines*, 308 Neb. 468, 954 N.W.2d 893 (2021).

Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court. *Id.*

Whether a claim of ineffective assistance of trial counsel can be determined on direct appeal presents a question of law, which turns upon the sufficiency of the record to address the claim without an evidentiary hearing or whether the claim rests solely on the interpretation of a statute or constitutional requirement. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). We determine as a matter of law whether the record conclusively shows that (1) a defense counsel's performance was deficient or (2) a defendant was or was not prejudiced by a defense counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

### 1. EXCESSIVE SENTENCE CLAIM BASED ON ERRONEOUS CREDIT FOR TIME SERVED

Montoya does not argue that his consecutive terms of 24 months' and 12 months' imprisonment are excessive; his argument is solely related to the amount of credit he should have been given for time already served.

Neb. Rev. Stat. § 83-1,106 (Reissue 2014) creates the requirement for the court to determine and apply credit for time served. *State v. McCulley*, 305 Neb. 139, 939 N.W.2d 373 (2020). Section 83-1,106 states in relevant part:

(1) Credit against the maximum term and any minimum term shall be given to an offender for time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based. This shall specifically include, but shall not be limited to, time spent in custody prior to trial, during trial, pending sentence, pending the resolution of an appeal, and prior to delivery of the offender to the custody of the Department of Correctional Services, the county board of corrections, or, in counties which do not have a county board of corrections, the county sheriff.

. . . .

(4) If the offender is arrested on one charge and prosecuted on another charge growing out of conduct which occurred prior to his or her arrest, credit against the maximum term and any minimum term of any sentence resulting from such prosecution shall be given for all time spent in custody under the former charge which has not been credited against another sentence.

(5) Credit for time served shall only be given in accordance with the procedure specified in this subsection:

(a) Credit to an offender who is eligible therefor under subsections (1), (2), and (4) of this section shall be set forth as a part of the sentence[.]

When interpreting this statute, the Nebraska Supreme Court has said:

Noting that § 83-1,106(1) requires the sentencing court to grant credit when a sentence is imposed, we read § 83-1,106(4) as requiring that such credit shall be given which has not otherwise been applied, and the import of this subsection is that all credit available due to presentence incarceration shall be applied, but only once.

*State v. Banes*, 268 Neb. 805, 811, 688 N.W.2d 594, 598-99 (2004). The credit for time served to which a defendant is entitled is an absolute and objective number that is established by the record. *State v. McCulley, supra*.

Montoya's updated presentence investigation report (PSR) was submitted on December 13, 2023. It contains a document from "Lancaster County Corrections" dated November 29, 2023, showing that Montoya had the following "Dates Available for Detention Credit" in Lancaster County District Court Case CR22-470 (the current case):

| DATES AVAILABLE FOR DETENTION CREDIT | TOTAL DAYS |
|---|---|
| 7/17/21 to 8/9/2021; 7/14/22 to 4/18/2023; + See below | 303 |
| 9/21/2023 to 10/27/2023 Can be used for either DCR22-470 or CCR23-10589 | 37 |
| 11/9/23-12/19/23 Can be used by either DCR22-470 or CCR23-12728 | 41 |

(Emphasis in original.) The total of these credits equals the 381 days' credit set forth in the district court's December 20, 2023, sentencing order. Therefore, it is evident that the court applied to this case the optional credits available for either the present case or the other cases, which the PSR indicates are two separate county court cases in Lancaster County. Both "CCR23-10589" and "CCR23-12728" were cases docketed after Montoya was placed on probation in the current case.

Montoya does not challenge the above credited dates that total 381 days. However, he argues that he should have received credit for 524 days. He contends that "[a] quick review of the record makes it clear that [Montoya] was also incarcerated from March 2, 2022 to July 15, 2022. As such, [Montoya] was not given credit for all of his time previously served." Brief for appellant at 17. That is the extent of Montoya's argument. He does not direct us to any portion of the record that would support his claim that he was incarcerated from March 2 to July 15, 2022, much less that any such alleged incarceration was related to this case. We also observe that the difference between the credit Montoya claims he is due (524 days, as stated at the sentencing hearing) versus what the PSR represents (381 days) is 143 days. But the alleged additional period claimed by Montoya from March 2 to July 15 totals 136 days. He does not explain the discrepancy in the total days of credit he claims he is due even when adding the alleged additional period.

Nevertheless, we have reviewed the 400-page PSR and found that while Montoya was incarcerated from March 2 to July 15, 2022, he was given credit for that time in a separate criminal case, Hamilton County District Court case No. CR 21-38 (see PSR pages 196-97 and 296-97). In

that case, Montoya was convicted of possession of a controlled substance without a tax stamp (count I) and resisting arrest (count II). Probation submitted a PSR in that case on January 31, 2023, that stated:

**Days in Custody:**        01/23/21 to 02/10/21 – 18 days
03/01/22 to Present – 352 days
Total: 370 days (if sentenced on
02/15/2023)

(Emphasis in original.) The Hamilton County District Court's "Judgment and Sentence" entered on February 15, 2023, sentenced Montoya to concurrent terms of 2 years' imprisonment on count I and 1 year imprisonment on count II; and Montoya was given 370 days' credit for time previously served. Because Montoya already received credit for his time served from March 2 to July 15, 2022, in Hamilton County District Court case No. CR 21-38, he cannot receive credit for that same time in the current case. See *State v. Banes, supra* (presentence credit applied only once).

Based on our review of the record before us, the district court was correct when it did not give Montoya credit in the current case for time served from March 2 to July 15, 2022.

Although not raised by the State at the sentencing hearing in district court, or in its brief to this court, it appears that Montoya may have been given double credit for time served from July 14, 2022, to February 15, 2023. Montoya was given credit for those days in the current case. And based on our review of the PSR, and as shown above, it appears that Montoya was already credited for those days in Hamilton County District Court case No. CR 21-38. Because credit can only be applied once, any overlap in the credit awarded (i.e. double credit for the same time frame) would be erroneous. That said, since this possible overlapping credit was not raised by the State either before the trial court or this court, and since we are unable to independently verify the accuracy of the documentation in the PSR, we will not address the potential double credit issue on a plain error review.

### 2. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

Montoya's appellate counsel is different from his trial counsel. He assigns as error that his trial counsel was ineffective for (1) failing to "investigate [his] claims that he was not getting credit for all of his time that he previously served in this matter," and (2) failing to "discuss the case with [him] has [sic] properly prepare [him] for hearings in this matter." Brief for appellant at 7.

When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020).

An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court. *State v. German*, 316 Neb. 841, 7 N.W.3d 206 (2024). When a claim of ineffective assistance of counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however,

an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *Id.*

Once raised, an appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* The record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice as a matter of law, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *Id.*

To prevail on a claim of ineffective assistance of counsel, the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Collins*, 307 Neb. 581, 950 N.W.2d 89 (2020). To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

### (a) Failure to Investigate Jail Credit

As stated previously, Montoya assigns as error that his trial counsel was ineffective for failing to "investigate [his] claims that he was not getting credit for all of his time that he previously served in this matter." Brief for appellant at 7. Montoya subsequently argues that "trial counsel failed to investigate [his] claims that the PSI had an inaccurate amount of jail credit." *Id.* at 14. He states:

> [Montoya] appeared on December 20, 2023 for sentencing. At that time, it was clear that Mr. Montoya had brought it to trial counsel's attention that his jail credit was not accurate. It was clear through trial counsel's comments that he did not make any effort to verify the jail credit. . . .
>
> [Montoya] contends that if trial counsel had made any inquiries or had investigated [Montoya's] concerns, [Montoya] would have been able to establish that his jail credit was not accurate[.]

Brief for appellant at 15. Montoya claims that he suffered prejudice because "he was not given credit for all of his jail credit." *Id.*

Although this section of Montoya's brief does not reference specific dates he claims trial counsel did not verify for jail credit, we presume Montoya's claim refers to the March 2 to July 15, 2022, dates argued in the excessive sentence portion of his brief. We have already determined that Montoya was not entitled to credit for those dates in the current case. Accordingly, this claim of ineffective assistance of counsel fails.

### (b) Failure to Prepare Montoya for Hearings

As stated previously, Montoya assigns as error that his trial counsel was ineffective for failing to "discuss the case with [him] has [sic] properly prepare [him] for hearings in this matter." Brief for appellant at 7. Montoya subsequently argues that "trial counsel failed to communicate with [him] prior to hearings to discuss defenses and trial strategy." *Id.* at 14. He states:

On October 25, 2023, [Montoya] was set for preliminary hearing on the Motion to Revoke Probation. When asked by the Court how [Montoya] intended to proceed, Trial Counsel informed the court that he had not had a chance to speak with Mr. Montoya and inquired of him on the record what he intended to do. . . . Trial counsel did not offer any evidence at the preliminary hearing. . . . On November 29, 2023, trial on the Motion for Revocation of Probation was held. During that hearing, trial counsel did not present any evidence.

Brief for appellant at 14. Montoya claims that he suffered prejudice because "he was not able to properly defend himself in the Revocation of Probation." *Id.* at 15. The State submits that Montoya's claim was not sufficiently argued. We agree.

The only hearing specifically mentioned by Montoya was the preliminary hearing on probation revocation held on October 25, 2023. At that hearing, Montoya was "present by video," and was represented by counsel who appeared in person. Counsel said, "I haven't had a chance to speak with Mr. Montoya regarding this," and then asked Montoya, "[A]re you wanting to proceed with preliminary hearing, or are you wanting to waive that and keep the plea offer open that we discussed?" Montoya stated, "I want to proceed with preliminary hearing." The State was then required to present evidence in support of its allegations that Montoya had violated his probation. The district court found that there was probable cause to believe that Montoya violated the order of probation. Arraignment and trial were scheduled for November 29. Montoya fails to assert how he was not prepared for the preliminary hearing, or how this ultimately prejudiced him in his probation revocation.

As for the trial on November 29, 2023, Montoya fails to assert how he was not prepared for trial due to an alleged lack of communication, or what evidence or defense should have been presented on his behalf at trial. In any event, Montoya cannot show prejudice. Ernst testified that Montoya failed to show up for probation meetings, drug tests, and pretreatment classes, and that he had been cited for additional crimes while on probation. Ernst also acknowledged that if she had been made aware of specific medical appointments that Montoya had, she would have worked to schedule meetings around those medical appointments. Ernst's testimony was sufficient to show that Montoya violated his probation. And the district court ultimately revoked Montoya's probation. Montoya has not demonstrated that but for the alleged deficiency by trial counsel, there was a reasonable probability that the result of the proceeding would have been different.

## VI. CONCLUSION

For the reasons stated above, we affirm the December 20, 2023, order of the district court. We also find that Montoya's ineffective assistance of trial counsel claims fail.

AFFIRMED.