IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. RAP

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

TERRA L. RAP, APPELLANT.

Filed July 8, 2025.   No. A-24-875.

Appeal from the District Court for Lancaster County: RYAN S. POST, Judge. Affirmed.

Timothy P. Sullivan, of Sullivan Law, for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

BISHOP, Judge.

## INTRODUCTION

Terra L. Rap pled no contest to two counts of third degree assault and one count of resisting arrest. The Lancaster County District Court sentenced her to an aggregate of 450 days in jail. Rap appeals, claiming that the district court imposed an excessive sentence and that her trial counsel was ineffective. We affirm.

## BACKGROUND

On July 15, 2024, the State filed a complaint in the county court for Lancaster County charging Rap with two counts of third degree assault on an officer or health care professional, a Class IIIA felony, in violation of Neb. Rev. Stat. § 28-931 (Cum. Supp. 2024).

From July 19 to August 6, 2024, Rap filed numerous "Inmate Request Form[s]" and letters to the county court, various judges, the county attorney, and her attorney. In those request forms and letters, she asked for the charges to be dropped or reduced, a bond review and reduction, and

earlier court hearings. She alleged that at the time of her arrest she was not read *Miranda*, she had a seizure and was denied medical treatment, and law enforcement officers used excessive force. She also alleged that she was pregnant at the time of her arrest and that, while in jail, she had a miscarriage and was denied medical treatment. Additionally, she alleged that she was not being given "good time."

The county court subsequently bound Rap over to the district court.

On August 28, 2024, the State filed an information charging Rap with two counts of third degree assault on an officer or health care professional, a Class IIIA felony, in violation of § 28-931, and one count of resisting arrest, a Class I misdemeanor, in violation of Neb. Rev. Stat. § 28-904 (Reissue 2016).

On September 23, 2024, pursuant to a plea agreement, the State filed an amended information reducing the first two counts against Rap to third degree assault, a Class I misdemeanor, in violation of Neb. Rev. Stat. § 28-310 (Reissue 2016); the count of resisting arrest remained the same. At a hearing that same day, Rap pled no contest to the three counts in the amended information. The district court advised Rap of the various rights she would be waiving if she entered that plea, and Rap expressed her understanding. The State provided the following factual basis for the plea:

On July 13th, 2024, at 2:48 a.m., officers made contact with Terra Rap as she had an active arrest warrant.

They told her that she is under arrest, and she began to walk away eastbound from the officers after they commanded her to stop and then she started to run.

Officers did make contact with her. She started flailing around, trying to pull away from officers. She was instructed to stop, then was escorted to the ground.

While on the ground, she began screaming and flailing around. Once Officer Franzen and Officer Wooster began to handcuff her, she started scratching at their arms, kicking them in the legs, and attempting to bite them. Officer Franzen was able to push Ms. Rap's head away when she attempted to bite him on the arm.

Once she was handcuffed, she refused to stand up and continued fighting with the officers, clinging to a pole with her legs. Took several officers to carry her to the cruiser and pull her into the back seat on the opposite side. She did continue to kick and scratch officers while being placed in the back of the cruiser.

During the course of the arrest, Officer Wooster and [Officer] Franzen noted that they received several scratches across their forearms, and breaking the skin, having pain and discomfort. Officer Franzen also received a painful strike to the knee.

All these events occurred in Lancaster County, Nebraska.

The district court accepted Rap's plea and found her guilty of the three counts in the amended information. The case was set for sentencing.

At the sentencing hearing on October 29, 2024, the district court sentenced Rap to 180 days in jail on each count of third degree assault, and 90 days in jail for resisting arrest; all three sentences were to be served consecutive to one another and to any other sentence previously imposed. She was given credit for 67 days already served.

Rap appeals.

## ASSIGNMENTS OF ERROR

Rap assigns, reordered, that (1) the district court abused its discretion by imposing an excessive sentence and (2) her trial counsel was ineffective because counsel failed to "adequately investigate her case and . . . help her with her pregnancy and miscarriage."

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## ANALYSIS

### EXCESSIVE SENTENCE

Rap was convicted of two counts of third degree assault and one count of resisting arrest, all Class I misdemeanors. A Class I misdemeanor is punishable by up to 1 year of imprisonment, a $1,000 fine, or both. See Neb. Rev. Stat. § 28-106 (Reissue 2016). Rap was sentenced to 180 days in jail on each count of third degree assault, and 90 days in jail for resisting arrest. Her sentences are within the statutory range. As such, we review the district court's sentencing determination only for an abuse of discretion. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022) (when sentences imposed within statutory limits are alleged to be excessive, appellate court must determine whether sentencing court abused its discretion in considering well-established factors and applicable legal principles).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Rap was 38 years old at the time of sentencing. According to the presentence investigation report (PSR), Rap was single and had one child. She was a high school graduate, had completed some college, and was unemployed. Rap "reported being diagnosed with ADHD and PTSD," and "[a]ccording to reports, [she] has also been diagnosed with brief psychotic disorder, schizophrenia in the past."

Rap's criminal history includes convictions for "Minor Possess/Sell/Dispense/Consume Alcohol" in 2006 (fined); "Injure or Destroy Property of Another," amended to "Disturbing the

Peace" in 2021 (fined); "Steal Goods or Money Less Than $500" in 2021 (fined); "Make False Statement to Police Officer" in 2021 (fined); "Domestic Assault, 3rd Degree," amended to "Disturbing the Peace" in 2022 and 2023 (30 days' jail and 60 days' jail, respectively); urinating in public in 2023 (fined); "Loiter and Trespass" five times between 2023 and 2024 (fined); "Failure to Appear in Court" five times in 2024 (fined); "Obstruct Public Way" in 2024 (fined); and "Resist Arrest, 1st Offense," "Obstruct a Peace Officer," and "Disturbing the Peace" in 2024 (7 days, 1 day, and 60 days in jail, respectively).

The probation officer conducted a "Level of Service/Case Management Inventory" as part of the presentence investigation and Rap was assessed as a high risk to reoffend. She scored in the "[v]ery [h]igh" risk range in the criminogenic risk factor domains for family/marital, companions, procriminal attitude, and antisocial pattern. She scored in the "[m]edium" risk range in the domains for criminal history, education/employment, and leisure/recreation. And she scored in the "[l]ow" risk range in the domain for alcohol/drug problem.

According to the PSR:

> During the presentence interview, [Rap] stated that she was experiencing a seizure at the time of her arrest and was denied medical attention by the officers. She also revealed that she discovered she was pregnant upon being booked into custody and claims she suffered a miscarriage due to the force used during her arrest. Furthermore, she alleges that she has been denied medical care for her miscarriage.
>
> [Rap] believes that the charges against her are unfair, alleging that the officers fabricated claims of her biting and kicking them. Additionally, she states that she was never read her Miranda rights.
>
> When asked if she takes responsibility for her actions, [Rap] responded that she believes the responsibility lies with the arresting officers, not herself. She stated that she was falsely arrested and that her constitutional rights were disregarded throughout the entire incident.

It was noted that Rap did not believe she would do well on probation due to being homeless.

At the sentencing hearing, Rap's counsel pointed out that, "as the PS[R] shows, obviously [Rap has] gone through a bit of a growth phase while she's been in jail learning some unfortunate and valuable lessons." Counsel also noted that Rap had a miscarriage while this incident was going on and had "periodic" seizures. Counsel asked that Rap be sentenced to time served, and "any sentence that she does have would run concurrent to anything that she's already been previously sentenced to." Rap had an "action plan" that included "three different potential places to stay"; she had completed numerous courses in jail, including obtaining her food handler's permit, "which means she is ready to go, as soon as she is able to be let free, to be a taxpayer"; and "[s]he actually wants to follow through again with CenterPoint" for her ADHD medication. Counsel stated, "This has been . . . one of the longest periods of time [Rap has] ever been in jail, by far," and "she wants to make some better amends with her situation, wants to be able to present herself better out here in society."

Rap personally addressed the district court stating, "I will admit that [sic] my errors and, you know, resist arrest, I will admit to that" and "I do see how that's wrong." She also stated, "I don't think that my actions were intentional nor reckless, nor did I do it knowingly because I did

have a seizure at the time," "[a]nd I'm not going to excuse my behavior." "I tend not to be a violent offender," "I'm not a repeat offender." She asked for "time served with good time concurrently."

The State submitted on the PSR.

The district court stated that it had reviewed the PSR, considered the comments of Rap and counsel, and considered the relevant statutory factors. It also considered Rap's prior "assaultive history," although it understood that "some of them were amended to disturbing the peace." "[W]e have just a really concerning period of time here with your conduct," and "this particular offense was -- and I know you dispute some of this, but I had a chance to look at the entire [PSR][,] [a]nd we've got the scratching, and the biting, the kicking -- or the attempting to bite"; "this was a mess." The court noted that it thought Rap "at least recognize[d] that, even if [she] dispute[d] some of the underlying facts." The court considered that information, and it also considered that Rap was a high risk to reoffend. Rap was sentenced as previously set forth.

On appeal, Rap argues only that "the trial court abused its discretion by sentencing her to an excessive sentence." Brief for appellant at 27. Although she sets forth much of the information we have detailed above, she does not explain how the sentence was excessive, nor does she contend that the district court failed to properly consider the relevant sentencing factors. She appears only to implicitly suggest that since her behaviors were "because of her seizures" and were therefore not "intentional or reckless," that this court should reduce her sentence. *Id*. at 26.

However, based on our review of the record, and considering all the relevant sentencing factors, we find that the sentences imposed by the district court were neither excessive nor an abuse of discretion.

INEFFECTIVE ASSISTANCE OF COUNSEL

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Rap has different counsel on direct appeal than she did in district court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Lierman, supra*. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's

performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

Rap assigns as error that "but for [t]rial counsel's ineffectiveness in failing to adequately investigate her case and to help her with her pregnancy and miscarriage, [she] would not have accepted the plea agreement." Brief for appellant at 6-7. Rap's assignment of error fails to set forth with any specificity how trial counsel was deficient in investigating her case or helping her with her pregnancy and miscarriage. In her argument, she notes only that the transcript contains "numerous jail kites and letters . . . which [Rap] sent to the Court and were filed with the Court" setting forth "various complaints of not being able to talk to her attorney, being pregnant and having a miscarriage, being injured during her arrest, not being read Miranda rights, being unfairly charged, requesting bond reductions, and requesting plea agreements." *Id.* at 22.

As pointed out by the State, the "Nebraska Supreme Court has rejected similar assignments of error, finding that they were insufficiently alleged." Brief for appellee at 12. See, for example, *State v. Wood*, 310 Neb. 391, 966 N.W.2d 825 (2021) (assignment of error that trial counsel was ineffective for failing to investigate case fully was insufficiently specific because it failed to specifically allege deficient performance). See, also, *State v. Mrza*, 302 Neb. 931, 935, 926 N.W.2d 79, 86 (2019) (appellant's assigned error that counsel was ineffective by "fail[ing] to adequately investigate [Mrza's] defenses and effectively cross-examine witnesses" lacked specificity demanded on direct appeal").

Even if we were to consider Rap's later argument in her brief, as set forth above, Rap only provides a list summarizing various complaints she made before her case was bound over to the district court. She does not explain how any of those complaints relate to any deficient performance by trial counsel, including how her trial counsel was deficient with regard to her pregnancy and miscarriage.

Accordingly, Rap's claim of ineffective assistance of trial counsel regarding counsel's alleged failure to "adequately investigate her case and . . . help her with her pregnancy and miscarriage," fails.

CONCLUSION

For the reasons stated above, we find that the district court did not abuse its discretion in sentencing Rap. We further find that Rap's ineffective assistance of trial counsel claim fails. We therefore affirm her convictions and sentences.

AFFIRMED.