IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

STATE V. WARBONNETT

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DANIEL R. WARBONNETT, JR., APPELLANT.

Filed November 10, 2025.    No. A-25-161.

Appeal from the District Court for Lancaster County: KEVIN R. MCMANAMAN, Judge. Affirmed.

Joshua D. Barber, of Barber & Barber, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Jacob M. Waggoner for appellee.

PIRTLE, BISHOP, and FREEMAN, Judges.

BISHOP, Judge.

### INFORMATION

Daniel R. Warbonnett, Jr., pled guilty to attempted possession of a firearm by a prohibited person. The Lancaster County District Court sentenced him to 8 to 12 years' imprisonment. Warbonnett appeals, claiming that the district court imposed an excessive sentence and that his trial counsel was ineffective. We affirm.

### BACKGROUND

On October 16, 2024, the State filed two separately docketed cases against Warbonnett. In Lancaster County District Court case No. CR24-1293, the State filed an information charging Warbonnett with one count of possession of a firearm by a prohibited person, a Class ID felony, pursuant to Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022). On January 3, 2025, the State filed an amended information charging him with one count of attempted possession of a firearm by a

prohibited person, a Class II felony, pursuant to Neb. Rev. Stat. § 28-201 (Reissue 2016) and § 28-1206.

In Lancaster County District Court case No. CR24-1290, the State filed an information charging Warbonnett with three counts: count 1, third degree domestic assault with bodily injury, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-323 (Reissue 2016); count 2, assault by strangulation or suffocation on a pregnant woman, a Class III felony, pursuant to Neb. Rev. Stat. §§ 28-115 and 28-310.01 (Cum. Supp. 2024); and count 3, first degree false imprisonment, a Class IIIA felony, pursuant to Neb. Rev. Stat. § 28-314 (Reissue 2016). On January 3, 2025, the State filed an amended information charging him with one count of assault by strangulation or suffocation, a Class IIIA felony, pursuant to § 28-310.01.

At a hearing on January 3, 2025, the district court stated that there were two cases before it, "CR24-1293 and CR24-1290." The State informed the court that there was a "plea agreement involving these two cases." The State said that in case No. CR24-1293, Warbonnett was originally charged with a Class ID felony, but "[w]e've agreed to lower that to an attempt, making it a Class 2 felony in exchange for his plea to that." "Connected with that is also at CR24-1290 where we've agreed to lower what was Count 2 in the original information to a Class 3-A felony and dismiss the remaining charges." Warbonnett and his counsel both confirmed that was the agreement.

Pursuant to the plea agreement, Warbonnett pled guilty to the amended charge in case No. CR24-1293 (attempted possession of a firearm by a prohibited person), and he pled no contest to the amended charge in case No. CR24-1290 (assault by strangulation or suffocation). The district court advised Warbonnett of his constitutional rights. Warbonnett confirmed his understanding of those rights, and confirmed that he was waiving those rights freely, voluntarily, intelligently, and knowingly.

The State provided the following factual basis for the plea in case No. CR24-1293 (attempted possession of a firearm by a prohibited person):

On July 1, 2023, Sergeant Clark with the Lincoln Police Department -- Sergeant observed a 2016 silver Chevy Malibu with Nebraska license plate . . . driving and parking outside of [an address]. He observed a female and male to exit the vehicle and enter the known residence of [Warbonnett] at [the address].

Sergeant Clark was able to identify [Warbonnett] that exited the passenger seat . . . , after he exited the residence and stood on the front porch of the residence. Sergeant Clark was aware that the owner of the Chevy Malibu had previously been [sic] reported that [a named female] had taken the vehicle without permission and was wanted for non-authorized use of a motor vehicle.

After locating the vehicle, Sergeant Clark contacted the owner of the vehicle that came to the street to take possession of the vehicle. And the owner brought a spare key to the vehicle to unlock the vehicle as the occupants had locked it prior to walking away. Officers conducted a search of the vehicle and during a search, they opened the engine compartment of the vehicle and located a green cloth bag on the driver's side of the vehicle that was searched and found to contain a black Taurus 9MM semi-automatic handgun loaded with one bullet in the chamber and additional bullets in the magazine that was inserted into the handgun.

Officers were aware that [Warbonnett] had previously been convicted of a felony offense, possession of a controlled substance, on November 30, 2022, in Lancaster County, and is prohibited from possessing a firearm. Officers contacted [Warbonnett] and obtained his DNA and sent that off to the state lab to be compared with the DNA, if any, that could be found on the firearm. On May 16, 2024, officers received a response from the Nebraska State Patrol Crime Laboratory confirming that [Warbonnett] contributed to a mixture of DNA located on the firearm and magazine of the firearm. All events in Lancaster County, Nebraska.

The State also provided a factual basis for the plea in case No. CR24-1290 (assault by strangulation or suffocation). The district court accepted Warbonnett's pleas and found him guilty on the counts in the amended informations in both cases. The cases were set for sentencing.

Both cases came on for sentencing at a hearing on January 30, 2025. The district court sentenced Warbonnett to 2 to 3 years' imprisonment for the assault by strangulation or suffocation (case No. CR24-1290); he was given credit for 306 days' time served. The court then sentenced Warbonnett to 8 to 12 years' imprisonment for the attempted possession of a firearm (case No. CR24-1293); he was given zero days' credit for time served. Warbonnett's sentences were to be served consecutive to each other, and to any sentence he was currently serving.

Warbonnett now appeals the district court's January 30, 2025, order in case No. CR24-1293 (attempted possession of a firearm by a prohibited person).

## ASSIGNMENTS OF ERROR

Warbonnett assigns, restated, that (1) the district court imposed an excessive sentence; (2) his trial counsel was ineffective because counsel (a) failed to object to the court's consideration, for sentencing purposes, of information regarding the presence of methamphetamine when the firearm was found, and (b) failed to inform the court of the terms of a May 2024 plea agreement which resolved two separately docketed cases; and (3) the two previous claims had the cumulative effect of depriving him of the effective assistance of counsel.

## STANDARD OF REVIEW

An appellate court will not disturb a sentence imposed within the statutory limits absent an abuse of discretion by the trial court. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019).

## ANALYSIS

### EXCESSIVE SENTENCE

Warbonnett was convicted of one count of attempted possession of a firearm by a prohibited person, a Class II felony, punishable by 1 to 50 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2024). He was sentenced to 8 to 12 years' imprisonment. His sentence was within the statutory range. As such, we review the district court's sentencing determination only for an abuse of discretion. See *State v. Blake*, 310 Neb. 769, 969 N.W.2d 399 (2022) (when sentences imposed within statutory limits are alleged to be excessive, appellate court must determine whether sentencing court abused its discretion in considering well-established factors and applicable legal principles).

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Lierman, supra*. The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Warbonnett was 32 years old at the time of sentencing. According to the presentence investigation report (PSR), he was single and had four children. He had a GED and was not employed due to his incarceration, but he reported working "under the table" prior to his arrest because he did not have proper identification. He reported smoking methamphetamine daily prior to his arrest, but he denied being under the influence at the time of the attempted possession of firearm offense. Warbonnett was affiliated with the Rosebud Sioux tribe.

Warbonnett's adult criminal history includes numerous convictions over a 15-year period. Among his convictions are charges for a suspended license, assault (bodily injury), stealing, disturbing the peace, driving under the influence, third degree assault, driving during suspension/before reinstatement, "Revoked/Impounded," "False Reporting – False Information," driving during revocation, possession of a controlled substance (multiple instances), obstructing a peace officer, operating a motor vehicle to avoid arrest, criminal mischief, leaving the scene of an accident, and third degree domestic assault.

Additionally, Warbonnett's criminal history reveals that in separately docketed case No. CR23-1278, he had his charges (one count of possession of a firearm by a prohibited person and one count of possession for a controlled substance) dismissed in May 2024; at different places in the PSR, it states that his charges were "Dismissed Per Plea Agreement" or "prosecution declined." And it appears that the charge for possession of a firearm by a prohibited person was refiled in the current case at issue, case No. CR24-1293. The underlying allegations in both cases stem from Warbonnett's possession or attempted possession of a firearm on July 1, 2023, when the Taurus 9-mm semiautomatic handgun was found during a vehicle search. Information in the PSR reveals that in addition to the firearm, marijuana and methamphetamine were found in the vehicle.

As part of the presentence investigation, a "Level of Service/Case Management Inventory" (LS/CMI) was conducted, and Warbonnett was assessed at an overall "[v]ery [h]igh" risk to reoffend. He scored in the "[v]ery [h]igh" risk range in the criminogenic risk factor domain for

antisocial pattern. He scored in the "[h]igh" risk range in the domains for criminal history, education/employment, leisure/recreation, companions, alcohol/drug problem, and procriminal attitude. He scored in the "[m]edium" risk range in the domain for family/marital.

At the sentencing hearing, Warbonnett's counsel acknowledged that Warbonnett's LS/CMI was "rated to be very high, high likely to reoffend." However, "the substance abuse index scored a low risk" and it "didn't appear that there's any issues" with his mental health. Warbonnett's "whole family unit is very close." "In this particular case, especially on the gun case, he has accepted accountability." And "[i]t wasn't as if the gun was being actively used in the course of a crime," "[i]t was found inside the engine compartment of a vehicle that he was in, inside of a bag." Warbonnett "was contemplating fighting the domestic abuse charge, the assault by strangulation[,] [h]owever, he opted to include that as part of a global plea agreement to take care of both cases." He had taken "full advantage" of the classes that were available to him while he was incarcerated. The two crimes occurred 1 year apart, but Warbonnett wanted the district court to "consider running any possible sentence concurrent to each other."

Warbonnett personally addressed the district court, stating that he took accountability. He wanted to apologize to the victim and "to anybody that I've hurt throughout the process of . . . my poor choices." He knew that his choices affected his children and that he would have to answer their questions openly and honestly.

The State contended that "it was very clear in the [PSR] that [Warbonnett] took the plea agreement for reduction on the gun charge," and "[h]e thought he had the domestic case beat entirely." He "decided to take the plea agreement because it was best for him"; "I don't think he did it because he felt remorse for the victim."

The district court went through the various sentencing factors. With regard to Warbonnett's past criminal record, the court noted in part, "In the [PSR], in 2023, possession of a controlled substance, Class 4 felony, sentenced to a year in jail there," and "here we've got this charge, possession of a firearm by a prohibited person, that Taurus 9MM with one in the chamber . . . and you've said you're well aware, that you were a felon and could not be in possession of that[,] [a]nd there was methamphetamine, as well, present." The court also noted,

> The safety of the community is paramount. Somebody's using and dealing drugs and has a history of those things, and a history of aggressive actions and assaults, who is a felon, who then still has a gun in their possession, that's exactly what this sort of -- what, I believe, I think this particular prohibition exists for.

The court stated that it considered the relevant sentencing factors, the PSR, statements by counsel, and Warbonnett's allocution. It then sentenced Warbonnett as set forth previously.

On appeal, Warbonnett argues that "the district court abused its discretion by considering irrelevant information," "[s]pecifically, all information related to the presence of methamphetamine on July 1, 2023," because that charge was dismissed in case No. 23-1278 (the first case filed related to the underlying incident). Brief for appellant at 21. However, the sentencing court in noncapital cases is allowed wide latitude in information it considers, including consideration of unadjudicated misconduct. See *State v. Galindo*, 278 Neb. 599, 774 N.W.2d 190 (2009).

Having reviewed the record, we cannot say the district court abused its discretion in imposing Warbonnett's sentence.

INEFFECTIVE ASSISTANCE OF COUNSEL

Generally, a voluntary guilty plea or plea of no contest waives all defenses to a criminal charge. *State v. Blaha*, 303 Neb. 415, 929 N.W.2d 494 (2019). Thus, when a defendant pleads guilty or no contest, he or she is limited to challenging whether the plea was understandingly and voluntarily made and whether it was the result of ineffective assistance of counsel. *Id.*

Warbonnett has different counsel on direct appeal than he did in district court. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020). Once raised, the appellate court will determine whether the record on appeal is sufficient to review the merits of the ineffective performance claims. *Id.* A record is sufficient if it establishes either that trial counsel's performance was not deficient, that the appellant will not be able to establish prejudice, or that trial counsel's actions could not be justified as a part of any plausible trial strategy. *State v. Theisen*, 306 Neb. 591, 946 N.W.2d 677 (2020).

When a claim of ineffective assistance of trial counsel is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. *State v. Lierman, supra*. Generally, to prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Blaha, supra*. To show that counsel's performance was deficient, a defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *Id.* In a plea context, deficiency depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *Id.* When a conviction is based upon a guilty or no contest plea, the prejudice requirement for an ineffective assistance of counsel claim is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *Id.* The two prongs of the ineffective assistance of counsel test under *Strickland* may be addressed in either order. *State v. Blaha, supra*.

Warbonnett claims that his trial counsel was ineffective because counsel (a) failed to object to the district court's consideration, for sentencing purposes, of information regarding the presence of methamphetamine when the firearm was found, and (b) failed to inform the district court of the terms of a May 2024 plea agreement which resolved two separately docketed cases, including case No. CR23-1278.

First, Warbonnett argues that the presence of methamphetamine when the firearm was found was "not relevant" for sentencing purposes "because the State had previously dismissed the Possession of Controlled Substance charge" (in case No. CR23-1278) and "never attempted to refile it." Brief for appellant at 16. He argues that "any increase in the severity or length of a sentence which results from consideration of conduct or facts upon which a previously dismissed charge was based" would, in essence, be barred by Double Jeopardy and collateral estoppel. *Id.* at

18. However, as noted previously, the sentencing court in noncapital cases is allowed wide latitude in information it considers, including consideration of unadjudicated misconduct. See *State v. Galindo, supra*. Because the sentencing court was entitled to consider the presence of methamphetamine when the firearm was found, trial counsel was not ineffective for failing to make a relevancy objection, and Warbonnett's claim fails. See *State v. Devers*, 313 Neb. 866, 986 N.W.2d 747 (2023) (defense counsel not ineffective for failing to raise argument that has no merit).

Second, Warbonnett argues that there was a reasonable probability that the outcome of this case would have been different if his trial counsel had informed the district court that "the Possession of a Controlled Substance charge filed at CR23-1278 had been dismissed pursuant to [a] May 1, 2024 plea agreement" and "that the State and Warbonnett contemplated that no Possession of a Controlled Substance charges related to the July 1, 2023 conduct would be refiled." Brief for appellant at 20. However, as noted by the State, "this information was contained in the [PSR]; therefore, the district court was already aware of this when sentencing Warbonnett." Brief for appellee at 15. Additionally, as discussed above, the sentencing court was allowed wide latitude in the information it considered. See *State v. Galindo, supra*. Accordingly, this claim of ineffective assistance of counsel fails.

Finally, Warbonnett contends that the two previous claims had the cumulative effect of depriving him of the effective assistance of counsel. Because we concluded that Warbonnett's claims of ineffective assistance of trial counsel fail, we find no prejudicial error under the cumulative error doctrine.

## CONCLUSION

For the reasons stated above, we find that the district court did not abuse its discretion in sentencing Warbonnett. We further find that Warbonnett's ineffective assistance of trial counsel claims fail, and that there was no cumulative error. We therefore affirm his conviction and sentence.

AFFIRMED.